Michael ROSKOS

v.

The UNITED STATES.

No. 107–75.

United States Court of Claims.

Feb. 23, 1977.

Ronald E. Abramson, Washington, D. C., for plaintiff; Hurwitz & Abramson, Washington, D. C., of counsel.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, and DAVIS and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge, delivered the opinion of the court:

In 1972, plaintiff Michael Roskos was a GS–14 employee who had served the Government for 37 years, 21 of them working for the Internal Revenue Service in Scranton, Pennsylvania. He had an excellent record with the IRS. On January 11, 1972, Roskos, then Group Supervisor of the Intelligence Division at Scranton, received notice of a proposed adverse action that he be demoted to a nonsupervisory position at GS–13 and transferred at that lower grade to the IRS office in Philadelphia. This action was proposed because it was believed that he had failed to report promptly information about improper conduct of subordinates.[1] At the time that he received notice of this proposed adverse action, Roskos was also twice advised of his right to retire, even though he stated during the discussion that he had no current plans to do so. He was detailed to Philadelphia immediately.

Plaintiff appealed the proposed demotion and relocation but three days prior to a Civil Service Commission hearing scheduled for April 20, 1972, the IRS modified its action from a demotion to a 10-day suspension, and simultaneously reassigned Roskos back to Philadelphia to fill a nonsupervisory position there at his old GS–14 grade level. This action effectively mooted the Commission hearing[2] but Roskos then filed a grievance within the agency, protesting the 10-day suspension and the second reassignment to Philadelphia. His superior determined that only the suspension was grievable, but in May 1972, the Washington IRS personnel director held the April reassignment contestable as well. On June 12, 1972, a grievance examiner was appointed to hear the case. A few days later, however, plaintiff retired, stating that his involuntary reassignment and transfer to Philadelphia was hazardous to his health and a hardship to his family.

Roskos' grievance proceeding continued after his retirement and ultimately the IRS Washington personnel office reversed the 10-day suspension but held that the reassignment was a proper exercise of the district director's general authority over his personnel.[3] In September 1973, plaintiff appealed the Service's reassignment decision and the voluntariness of his retirement to the Civil Service Commission which, after investigating both the validity of the reassignment and the voluntariness of the retirement, decided that the reassignment was proper and the retirement voluntary.[4]

Plaintiff then sought review in this court, asking for back pay since his retirement and for reinstatement to his supervisory position in Scranton; his main claim is that his retirement was involuntary, the result of calculated pressure amounting to duress. Both sides have moved for summary judgment on the basis of the administrative

---

1. Failure to report employee misconduct is a violation of the Rules of Conduct for Internal Revenue Service Employees, subsection 1941.-72 (revised 10/63).

2. Plaintiff apparently received whatever may have been due him, in the way of back pay, for the period of his superseded demotion.

3. The reversal of the suspension was based on the recommendation of the grievance examiner who found, in Februar  1973, that the suspen-

sion was unreasonable because the evidence used to show that Roskos had violated the IRS Rules of Conduct was too questionable. Administrative Record, Part I, p. 88.

4. The Commission considered the reassignment only in connection with the employee's claim that his retirement had been involuntary; by itself the second reassignment, without loss of pay, would not be reviewable by the Commission after having been upheld within the agency.

record, and the case can be decided on what is now before us.

The focus of our consideration must be the voluntariness of plaintiff's retirement in June 1972. If that choice was freely made, he had no right after that event to further employment by the Federal Government—and the second (April) assignment to Philadelphia, although it may have been unjustifiable, would not in itself lead to a monetary claim cognizable in this court, even for the period from April to June 1972, since his pay was not reduced by that transfer.[5] At the same time, this court, like the Civil Service Commission, cannot escape taking account of the reassignments (and the other actions taken against plaintiff) in deciding whether his retirement was in fact voluntary. The conclusion of the Commission's Appeals Review Board that the retirement was voluntary rests almost entirely on its prior determination that the reassignments to Philadelphia were proper.

Plaintiff builds his case to prove that, from the very beginning of the adverse action proceeding in January 1972, his superior was intent on forcing his retirement, and that motivation was the spur to the continuing assignment to Philadelphia. We can refrain, however, from delving into that over-all position; we can assume *arguendo*, as the Commission held and the Government argues, that if Roskos was to be demoted from his supervisory position for a serious dereliction, it was good managerial practice to remove him both from the company of the persons he had previously supervised and from the geographic area in which he had held a leading role in tax

criminal prosecutions. We can even assume for this case that the IRS acted in utter good faith when it first charged him (in January 1972) with the dereliction of failing to report misconduct, and determined to relieve him of supervisory duties, to demote him, and to remove him from Scranton tax affairs.

For us the crucial fact is that in April 1972 the superior who had charged and disciplined Roskos decided, on his own, that the penalty should be drastically lessened from a permanent demotion to a mere 10-day suspension, leaving plaintiff in his grade 14. Coming as it did after the initial imposition of a demotion, the minor penalty of a short suspension necessarily indicated that the dereliction, if it existed at all, was itself minor. We cannot believe that the levying of such a small sanction would have so compromised plaintiff with his subordinates or with the Scranton community that he had again to be immediately removed to a distant post in Philadelphia, even before his appeal could be processed.[6] Neither do we think that plaintiff's superior, after having so sharply reduced the penalty, could rationally make such a determination. Small violations invoking small sanctions, even at the supervisory level, do not normally trigger such a strong adverse reaction in the community or in the work-force as to warrant instantaneous exile or isolation.[7]

Plaintiff's superior has disavowed, as the defendant still does, any disciplinary taint to the April transfer, but we can find in the record no acceptable good-of-the-service rationale for requiring plaintiff to go back

---

5. As already indicated, plaintiff has been compensated for loss of pay, if any, due to the two disciplinary actions which were altered or reversed within the Internal Revenue Service, *i. e.* the demotion from GS–14 to GS–13 and the 10-day suspension.

6. It should be recalled that (a) plaintiff had been working in Philadelphia ever since he had been charged in January 1972, first on detail and after the proposed demotion was made effective (in March) by formal transfer; and (b) when the demotion was reduced in April to a 10-day suspension, plaintiff's then transfer was rescinded but he was simultaneously retrans-

ferred to a different job in Philadelphia at the higher GS–14 level.

7. Although plaintiff's superior said at the Commission hearing that Roskos could not be effective in his old position any longer, he did not consult in April with any of plaintiff's coworkers or with community members to ascertain whether this suspicion was correct. Indeed, plaintiff submitted character letters on his behalf which indicate that several community members, including judges, a former U.S. Attorney and a fellow employee, felt that he should continue his job in Scranton. *See also* note 8, *infra.*

*instanter* to Philadelphia (in a different job from the one which he had filled since January) even though his demotion had been rescinded, a very much lighter penalty substituted, and the disciplinary proceeding was not yet final. Nor was there any other institutional or managerial reason for the April reassignment; the slot in the Philadelphia office in which Roskos was then placed had long been vacant and does not seem to have required any important or pressing work. The April transfer simply had no solid or substantial basis in personnel practice or principle.[8]

We must conclude, accordingly, that that reassignment, coming right after and continuing the earlier transfer which was said to be premised on a very different set of circumstances, was not valid as a discretionary managerial determination but was either an improper effort to pressure plaintiff to retire or was at the least an arbitrary and capricious adverse action. *Cf. Motto v. General Services Administration*, 335 F.Supp. 694 (E.D.La.1971), *aff'd without opinion*, 502 F.2d 1165 (5th Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975); *Kletschka v. Driver*, 411 F.2d 436, 445–46 (2d Cir. 1969).

It follows, too, that Roskos' retirement in June 1972 must be characterized as involuntary. The ground he gave for the retirement was that the "involuntary reassignment and transfer to Philadelphia is hazardous to health and hardship to family," and there is no reason to doubt that explanation. Philadelphia was much too far from Scranton, where plaintiff had his family and his roots, for him to commute daily or otherwise than for the weekends. Unable to predict how long an appeal of his reassignment would take, Roskos could not relocate his home and family. It was a hardship which had to be borne only if the April reassignment was proper. Because that reassignment was invalid rather than proper,[9] it represented an unjustifiable coercive action by the Government against plaintiff which, taken together with the fact that he was a family man, directly produced his retirement.[10] The case thus falls within the principle that a resignation or retirement is vitiated if it results from coercive acts of the Government which leave the employee with no practicable alternative.[11]

Of course, not every unpleasant working arrangement or distasteful set of alternatives constitutes duress or renders an otherwise voluntary act involuntary. *See, e. g., Christie v. United States*, 518 F.2d 584, 587–88, 207 Ct.Cl. 333, 338 (1975). But here the retirement was directly caused by the April assignment to Philadelphia which the IRS had no lawful authority to command. An action is not voluntary if it

---

8. In upholding the transfer as proper, the Commission's Appeals Review Board did not separate out the earlier reassignment (based on the initial demotion) but erroneously carried over the reasons for that transfer to the April reassignment. There was no independent consideration by the Board of the April transfer.

9. We think that the IRS also violated plaintiff's rights when it detailed him to Philadelphia during the 30-day notice period following service of the letter of charges in January 1972. The Civil Service Commission regulations call upon the employing agency to retain the charged employee in his regular position during the notice period—if that is at all practicable and there is no emergency. 5 CFR 752.202(d); FPM Supp. S5–4a. The charge made against plaintiff in January 1972 does not seem to us to warrant, even assuming that the agency was acting in good faith, his being sent at once to Philadelphia.

10. The Federal Personnel Manual Supp. 752–1 Subch. S1, 2a(1), declares that "whether an action is voluntary or involuntary is determined not by the form of the action but the circumstances that produced it."

11. *See, McGucken v. United States*, 407 F.2d 1349, 1351, 187 Ct.Cl. 284, 289, *cert. denied*, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); *Fruhauf Southwest Garment Co. v. United States*, 111 F.Supp. 945, 951, 126 Ct.Cl. 51, 62 (1953). As the court has stated, the three elements necessary to show duress are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.

is produced by government conduct which is wrongful. *See Int. Tel. & Tel. Co. v. United States*, 509 F.2d 541, 549–50 (n. 11), 206 Ct.Cl. 37, 52–53 (1975); *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389, 187 Ct.Cl. 15, 29 (1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970); *Fruhauf Southwest Garment Co. v. United States, supra*, 111 F.Supp. 945, 951, 126 Ct.Cl. 51, 62 (1953).[12]

■ Our conclusion that plaintiff's retirement was wrongly coerced is not negated by his failure to claim expressly, at the time he filed his retirement application in June 1972, that he was retiring involuntarily. He did mention the involuntary nature of the reassignment and the hardship it caused; and six weeks later (in August 1972) he put forth at his grievance hearing an explicit claim that the retirement itself was involuntary. That August notice was prompt enough so as neither to prejudice defendant nor to tag the claim of coercion as a mere afterthought. Similarly, it is relatively unimportant that he may never have specifically protested to his superiors (before June 1972) that the reassignment was a hardship; they knew that he kept protesting the transfer, did not like it, and that he considered it illegal. Nor are we put off by the fact that he applied for retirement just a few days after the IRS had designated an examiner to hear his grievance. He had been directed to work in Philadelphia ever since January 1972; his Civil Service Commission appeal from the initial demotion and reassignment had been mooted in April by the IRS's reduction in the penalty to a 10-day suspension; that caused a substantial delay in the effort to clear his name. There had been some further delay in obtaining review through the IRS grievance procedure because his superior deemed the April reassignment not to be within that procedure, and this ruling had to be reversed by the national office. Above all, Roskos had no real notion how much more time would elapse before his appeal within the agency could be finally decided. Faced as he was with a continuing wrongful transfer to Philadelphia, he did not have to wait indefinitely before trying to relieve the improper pressure on himself and his family.

For these reasons, plaintiff's motion for summary judgment is granted and defendant's motion is denied. Plaintiff is ordered reinstated to his pre-retirement and pre-reassignment position in Scranton, and awarded back pay, the amount to be determined under Rule 131(c).

BENNETT, Judge, concurring:

I accept the cogent reasons advanced by the court to support plaintiff's recovery. However, I feel that it has overlooked an additional viable reason therefor and perhaps misconstrued, but with no ultimate detriment here to plaintiff, the effect of his agency's backing down in April 1972 from its January 1972 adverse action in reducing plaintiff's grade. The court says that this retreat mooted the appeal from the action. Not so. Defendant's April transfer of plaintiff at a reduced *rank* was only a reaffirmation of what defendant proposed in January and which it did not at any time back away from. The reduction in rank is just as much of an adverse action as a reduction in grade and pay. It therefore entitles an employee to all procedural rights flowing therefrom regardless of the fact that his grade and salary are not reduced. These rights were not accorded to plaintiff.

The pertinent statute is 5 U.S.C. § 7511 (1970), which states:

(2) "adverse action" means a removal, suspension for more than 30 days, furlough without pay, or reduction in rank *or pay*.

Here is what the Federal Personnel Manual has to say on the subject of rank and grade at FPM Supp. 752–1, Subch. S2(2) (1966) (now Subch. S1–4 (1976)):

The term *rank* \* \* \* has been held by the Commission and by the courts to

---

**12.** Though it found both reassignments proper, the Appeals Review Board seemed to agree that, if the April transfer was improper, the retirement would not have been voluntary.

mean something more than grade * *. Basically, it means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment * * *. When an employee is made the subject of a personnel action which results in a lowering of his relative standing in the agency's organizational structure, then, a reduction in rank has occurred, even though the employee has not been reduced in grade. * * *.

The uncontested fact here is that on April 17, 1972, plaintiff was reassigned from his GS–14 position as a supervisory criminal investigator (group supervisor of the Intelligence Division of the IRS, Scranton) to a GS–14 position as a criminal investigator (staff assistant) in Philadelphia. In his Scranton position plaintiff was responsible for the work of from 12 to 16 men who investigated tax fraud cases. These were all high-level employees, classified as high as GS–13. The supervisor's position was one of importance, respect and heavy responsibility. The Philadelphia position, by contrast, was nonsupervisory and its duties were of a clerical nature with little serious responsibility. In fact the position had long been left vacant. The Philadelphia position entailed such tasks as checking on the work of typists, summarizing the reports of group supervisors, and developing orders

for equipment and keeping it safe. These are duties of a low-grade clerk, and the fact that the position carried a high grade and salary in plaintiff's case (GS–14) does not make it otherwise. It is plain that plaintiff's "relative standing in the agency's organizational structure" went down drastically when he assumed the position to which he was transferred in Philadelphia. This, then, was a reduction in rank and an adverse action against plaintiff according to law.

It is uncontested here that a preference eligible against whom an adverse action is proposed is entitled to at least 30 days advance written notice thereof, a reasonable time to answer personally and in writing and to furnish affidavits, a notice of an adverse decision, and must be kept in his regular position during the notice period, if at all practicable. 5 U.S.C. § 7512(b) (1970), FPM Supp. 752–1, Subch. S5–4a (1966), 5 C.F.R. § 752.202(d) (1971). Plaintiff was denied these safeguards to his rank. It is hard to imagine a more flagrant disregard of procedural due process explicitly provided for by statute and regulation. We do what we can to correct the error by reinstating plaintiff and giving him back pay.

