Eric H. BIDDLE, Jr., Appellant,

v.

UNITED STATES of America et al. (ACTION).

No. 78–1581.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1979.

Decided June 26, 1979.

Irwin Mininberg, Washington, D.C., for appellant.

Jerry D. Bernstein, Asst. .U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellees.

Before BAZELON and McGOWAN, Circuit Judges, and GESELL,* United States District Judge for the United States District Court for the District of Columbia.

Opinion Per Curiam.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Appellant claims that, as a result of this campaign, he was "placed in a position of total isolation; he was not subject to supervision or under any obligation to perform duties commensurate with his GS–15 position and was

## PER CURIAM.

Appellant, Eric Biddle, appeals from an order of the United States District Court for the District of Columbia upholding a decision of the Federal Employee Appeals Authority ("FEAA"). We affirm.

Mr. Biddle was from 1952 to 1960 an employee of the CIA. In 1965, he joined the Office of Voluntary Action, which in July 1971 merged with VISTA and the Peace Corps to form ACTION. Henceforward, according to appellant, he was subjected to

a sustained campaign of discrimination, based on his previous employment with CIA, which manifested itself in a refusal by Action to permit him to perform his job function as a GS–15 . . . .

Appellant's Brief at 2.[1] On December 1, 1974, a reduction-in-force ("RIF") caused appellant to be demoted from his GS–15 post to a GS–14 position. Twelve days later, Mr. Biddle lodged a complaint with the FEAA, stating that:

[The RIF] is merely the culmination of three years of discrimination against me by ACTION . . . In effect, my reduction in rank is an adverse action in the guise of a RIF . . . . .

. . . .

I hereby appeal to the Civil Service Commission to rule that such discrimination is illegal . . . . I also ask you to order this agency to give me the work appropriate to my rank and grade . . . which ACTION has steadfastly refused to give me . . . .

. . . .

I kept in touch with the CSC over the past three and a half years . . . . However, the gentlemen of the CSC told me there was nothing your commission could do until and unless adverse action were taken. Now it has been taken and now I appeal to you.

told to 'look around for other employment.'" Appellant's Brief at 2. Put another way, he alleges that he was "stripp[ed] . . . of his responsibilities, divest[ed] . . . of all of the vestiges and incidents of gainful employment, and . . . designat[ed] . . . as a pariah among his peer group. . . . " *Id.*

The FEAA treated this letter as raising solely the issue of the validity of the RIF, and on June 6, 1975, held against the appellant on the merits, finding the RIF to have been legal. Appellant appealed to the District Court, which by agreement of the parties remanded the case to the Civil Service Commission. A hearing was then held by the FEAA, which once again limited its inquiry to the RIF and concluded by upholding the validity of the agency's action. The District Court, on appellant's new appeal, accepted the legal and factual conclusions of the FEAA on April 21, 1978, and this appeal followed.

· Appellant no longer challenges the validity of the December 1974 RIF. Rather, he contends that the FEAA improperly refused to consider his discriminatory treatment claims covering the 1971 to 1974 period.[2] We conclude, however, that even on the assumption that appellant's ambiguous December 13, 1974, letter raised his pre-RIF maltreatment claims, the FEAA properly refused to pass upon them.

During the relevant time period,[3] the FEAA could hear only two kinds of appeals of significance to this action: it was authorized to hear challenges to RIFs, see 5 C.F.R. §§ 351.901, 772.101, 772.301(a) (1978), and to hear all appeals concerning "adverse actions," see 5 C.F.R. §§ 752.203(a), 772.101, 772.301(a) (1978). The term "adverse action," however, did not comprehend the pre-RIF discriminatory treatment about which appellant still complains. The regulations defined "adverse action" to mean any of the following: "(1) Removal; (2) Suspension for more than 30 days; (3) Furlough without pay; and (4) Reduction in rank or pay . . . ." 5 C.F.R. § 752.201(b) (1978). Only one of these categories, "reduction in rank," might have arguably applied to this case. Such was, however, precluded by the following provision in the Federal Personnel Manual:

> In law and the Commission's regulations, the term *rank* . . . means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment. An employee's position assignment may be changed only by an official personnel action . . . . (An official personnel action is an action which requires the issuance of a Standard Form 50 or a form used instead of SF 50). . . .

FPM Supp. 752–1, Subch. S1–4a (1976).

The pre-RIF treatment which appellant challenges did not fit within this definition of "official personnel action."[4] Hence, appellant's claim is not one which involved an "adverse action"[5] and therefore was not a matter which the FEAA could hear.

**2.** Appellant also maintains that his rights to due process were denied by the FEAA, pointing to the fact that several evidentiary items were excluded by the Administrative Law Judge. This claim is, however, simply an extension of appellant's main contention. It would have some potential merit only were this Court to decide that the FEAA improperly restricted its inquiry to the December 1974 RIF.

**3.** This opinion does not address the effect, if any, which the Civil Service Reform Act of 1978, Pub.L. 95–454, 91 Stat. 1111 (1978), may have on any subsequent proceedings in this case or on any current or future federal employee complaint.

**4.** Even if appellant were now able to show that on one or more discrete occasions during the 1971–74 period his position assignment was changed by the use of a Standard Form 50 or the like, his challenge would come too late. The regulations provided him with 15 days "after the adverse action ha[d] been effected" to present his complaint to the FEAA. 5 C.F.R. § 752.203(a) (1978). Except for the demotion appellant suffered in connection with the RIF, the record discloses no change in appellant's employment position (accompanied by a SF 50 or the like) which occurred during the 15 days prior to December 13, 1974.

**5.** *Roskos v. United States*, 549 F.2d 1386 (Ct.Cl. 1977), does not help appellant. The portion he cites was in a concurrence to a 3–0 opinion, *see* 549 F.2d 1390–91, which concurrence decided to make an additional point not decided by the majority. In any event, *Roskos* is factually distinguishable from the case at hand since the employee in that case was in fact officially reassigned and that reassignment was from a GS–14 position in one city to a GS–14 position in another.

Rather, appellant's complaint fell neatly within the then-applicable definition of a "grievance." Under 5 C.F.R. § 771.108 (1978), an agency's "grievance" procedures had to apply "to any matter of concern or dissatisfaction to an employee which is subject to the control of agency management or any matter in which an employee alleges that coercion, reprisal, or retaliation has been practiced against him or her." A "grievance," though, could not be presented to the FEAA, see 5 C.F.R. § 771.118 (1978), but could only be raised within the employee's own agency, with a direct right of appeal to the District Court, see e.g., *Schwartz v. FERC*, 188 U.S.App.D.C. 175, 578 F.2d 417 (1978). Accordingly, appellant presented in December 1974 his pre-RIF complaints to the incorrect forum.[6]

At oral argument, counsel for the Government represented to appellant and to the Court that Mr. Biddle is free now, as he has been for some time, to pursue his grievance through the procedures established for that purpose. For the aforementioned reasons, we must leave appellant to those remedies and the order of the District Court is AFFIRMED.

---

6. Any similar post-RIF discriminatory treatment complaint which appellant may have would also be a "grievance," subject to challenge within his agency.