**Stephen A. ARNESON, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 88–1712.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1988.

Decided July 14, 1989.

---

Michael J. Hoare, St. Louis, Mo., for appellant.

Joseph B. Moore, St. Louis, Mo., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,* District Judge.

BEAM, Circuit Judge.

Steven A. Arneson appeals the dismissal of his claim against his former federal employer under the Rehabilitation Act of 1973. We remand.

I. Background

Steven A. Arneson was employed by the Social Security Administration (SSA) from March of 1968 through January of 1983. In 1975, he learned that he suffers from a neurological disorder known as apraxia. Arneson, the holder of Bachelor of Arts and Masters of Business Administration degrees from the University of Iowa, as a result of the disorder, is very easily dis-

---

* The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri, sitting by designation.

tracted by activity around him and has an impaired ability to concentrate and to simultaneously perform motor and cognitive tasks. He also has difficulty with comprehending spoken and written language and difficulty in acquiring and processing data. In addition, he has poor handwriting skills, poor reading skills and poor organizational skills.

While employed by the SSA, Arneson worked as a claims representative. The majority of his time was spent interviewing claimants to obtain information for applications for Social Security benefits, advising claimants of their eligibility for benefits, gathering work and medical histories and assisting in determining a claimant's entitlement to Social Security benefits.

Until September of 1980, Arneson worked at the SSA office in Clayton, Missouri. As a result of his diagnosis and the recommendation of a psychologist who evaluated Arneson, certain accommodations were made to provide Arneson with a work area where he could be most productive. His desk was relocated from the large area where he had worked with the other claims representatives to a three-sided room which had previously been used as a stock room. Arneson was also given a telephone headset to allow him to have both hands free while he talked on the phone as well as assistance in organizing his work. As a result of these accommodations, the quality of his work improved.

In September of 1980, Arneson voluntarily took reassignment to a new branch office in Maryland Heights, Missouri. At the Maryland Heights office Arneson's desk was placed in a large room with the other claims representatives. To provide some accommodation, his desk was placed in the back of the room where it was thought there would be less distraction. In addition, he was given a telephone headset similar to the one he used in the Clayton office and, again, received organizational assistance.

From the period of October 1, 1980, to September 30, 1981, Arneson received "satisfactory" ratings on his Employee Appraisal and Performance Rating Certifica-tion. However, on January 21, 1982, Arneson's immediate supervisor, Russell Hudson, wrote to Arneson informing him that his work was unsatisfactory. At Arneson's Performance Review on July 23, 1982, Hudson again told Arneson that his work was unsatisfactory. On October 5, 1982, Hudson and the branch manager met with Arneson and advised him to apply for voluntary disability retirement. They told Arneson they would initiate removal proceedings if he did not do so.

On November 30, 1982, the SSA issued its proposal to remove Arneson, citing approximately 75 instances of unsatisfactory performance. Arneson was terminated effective January 21, 1983.

On January 18, 1984, Arneson applied for and was granted disability retirement under the Civil Service Retirement System.

On October 31, 1984, Arneson filed this action under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, seeking reinstatement and back pay. Following a trial, the district court entered judgment in favor of the SSA. Arneson appeals.

## II. Discussion

It is Arneson's contention that he is an "otherwise qualified handicapped individual" within the meaning of the Rehabilitation Act and that the SSA failed to make the reasonable accommodations necessary to enable Arneson to do his job satisfactorily as required by the Act. He claims that had reasonable accommodations been made, he would have been able to perform his job. However, before we can deal with the substantive portion of Arneson's appeal, we must first determine whether his claim is barred because of his retirement from federal service.

### A. Retirement from federal service

■ Upon termination, Arneson became eligible for disability retirement from the federal service. However, to secure those benefits, he had to file an application for a disability annuity within one year of the date of his separation. 5 C.F.R. §§ 831.501 and 831.502. Nearly a year after his dis-

charge, Arneson filed the necessary application and began receiving monthly benefits. The district court held that this action bars his claim under the Rehabilitation Act. "[B]y accepting retirement, the [federal] employee has voluntarily surrendered all claims to his former position." *Brown v. United States*, 2 Cl.Ct. 586, 587 (1983), *affirmed without opinion*, 732 F.2d 167 (Fed.Cir.1984).

In reviewing "the right of a retired employee to reinstatement and back pay * * * '[t]he focus of our consideration must be the voluntariness of plaintiff's retirement * * *. If that choice was freely made, he had no right after that event to further employment by the Federal Government.' " *Taylor v. United States*, 591 F.2d 688, 690, 219 Ct.Cl. 86 (1979) (quoting *Roskos v. United States*, 549 F.2d 1386, 1388, 213 Ct.Cl. 34 (1977)). While it is true that Arneson was faced with making the difficult decision of either losing his retirement benefits or losing his ability to pursue his claim for reinstatement, "the fact that an employee * * * has to chose between two unpleasant alternatives does not make the resulting action involuntary." *Taylor*, 591 F.2d at 692.

However, the Court of Claims in *Roskos* held that the plaintiff's retirement was involuntary because the court found that the transfer, which precipitated the retirement, was unlawful. "An action is not voluntary if it is produced by government conduct which is wrongful." *Roskos*, 549 F.2d at 1389–90 (citations omitted).

Because Arneson's termination may have been unlawful, i.e., in violation of the Rehabilitation Act, we cannot say that his retirement bars his claim for back pay and reinstatement. If his termination was unlawful, then he has the right to seek this remedy regardless of his retirement. Consequently, we consider Arneson's claim under the Rehabilitation Act.

B. Otherwise qualified handicapped individual

Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with handicaps * * * shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity * * * conducted by any Executive agency * * *.

29 U.S.C. § 794 (Supp. IV 1986). "Section 501(b), 29 U.S.C. § 791(b), requires the federal government as an employer to develop and implement affirmative action plans on behalf of handicapped employees." *Gardner v. Morris*, 752 F.2d 1271, 1277 (8th Cir.1985). The district court found that Arneson was a handicapped individual within the meaning of the Rehabilitation Act but found that he was not an otherwise qualified handicapped individual within the meaning of the Act. An otherwise qualified handicapped individual is one who, with reasonable accommodation, "can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f) (1988).

Arneson claims that the district court was incorrect in finding that he had "the initial burden of establishing that he is an 'otherwise qualified handicapped individual,' that is, one, who with reasonable accommodations, is able to perform the requirements of his job despite his handicap." *Arneson v. Heckler*, No. 84–2552C(3), slip op. at 12, 1988 WL 42351 (E.D.Mo. Mar. 30, 1988). We agree. Arneson is only required to provide evidence sufficient to make "at least a facial showing that reasonable accommodation is possible." *Gardner v. Morris*, 752 F.2d at 1280. At that point, the burden shifts to the SSA to prove that it is unable to accommodate Arneson. "Once it has been established that (1) the employee has been denied employment on the basis of his handicap and (2) the particular handicap would impair job performance unless job requirements are modified, the dispute focuses on whether the employer can reasonably accommodate the handicapped employee." *Id.* at 1279–80. It is undisputed that Arneson was terminated because of poor job performance, which performance was due to the effects of apraxia. It is also undisputed

that some modifications of his job requirements are necessary to enable him to perform his job. Therefore, we must focus on what kinds of accommodations will be required and whether these are reasonable.

■ Arneson claims that accommodations can be made which will enable him to satisfactorily perform his job as a claims representative. The SSA argues that it has made reasonable accommodations and Arneson's work performance has not improved sufficiently. Further accommodations, the SSA contends, would be beyond the requirements of the Rehabilitation Act.

Arneson contends, based upon his consultations with a variety of psychological and occupational experts, that he could improve the performance of his job if he had the following: (1) a telephone headset to free his hands; (2) a quiet workspace to diminish distractibility; and (3) clerical assistance to check his work. In addition, it has been suggested that Arneson be allowed to modify his work hours to enable him to work in the office when there are less distractions or, in the alternative, that he be allowed to take work home. It has also been suggested that Arneson be transferred back to the Clayton office. The SSA claims that each of these alternatives, with the exception of the headset, with which Arneson has been provided, is not feasible. The SSA states that there is no private office available for Arneson at the Maryland Heights office and that to provide him with the kind of assistance that he needs, the SSA would have to hire someone who is capable of performing Arneson's job. This would result, basically, in hiring two people to do the job of one. Furthermore, it is against SSA policy, for security reasons, to allow an employee to take work home or to be in the office after normal business hours. As for a transfer back to the Clayton office, Arneson's supervisor rejected that possibility because he felt it would not "enable [Arneson] to do a better job." Tr. at 288. Therefore, the SSA concluded, and the district court agreed, that it had made reasonable accommodations to Arneson and he was still unable to perform his job satisfactorily. As a result, the SSA contends,

Arneson's termination was not in violation of the Rehabilitation Act.

■ Although a district court's findings of fact are not to be set aside unless clearly erroneous, we believe that this matter involves an application of the law to the undisputed factual determinations made by the court. As such, the district court's conclusions with regard to whether the accommodations made by the SSA were reasonable and whether there are additional reasonable accommodations which can be made, are reviewable de novo. *See Carter v. Bennett,* 840 F.2d 63, 65 (D.C.Cir.1988).

In determining what kinds of accommodations are reasonable, courts are permitted to "take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy." 29 U.S.C. § 794a(a)(1) (1982). An unreasonable accommodation is one which "would impose undue hardship on the operation of its program." 29 C.F.R. § 1613.704(a) (1988).

We disagree with the district court's conclusion that the SSA had made reasonable accommodations and that even with reasonable accommodations, Arneson was unable to perform the job. It seems that there were some possible accommodations which were not given much credence by the court, such as a clerical assistant or transferring Arneson back to the Clayton office where a semi-private office was available. It does not appear from the record that these alternatives were adequately examined in an effort to determine the cost of such accommodations and the impact they would have on the operation of the SSA office. For example, further development is necessary to ascertain what duties this assistant would have to perform in order to have some impact on Arneson's job performance, what the cost of such an assistant would be and whether additional funding may be available to offset the cost to the SSA. Obviously, it is beyond the expectations of the Rehabilitation Act that the SSA be required to hire another person capable of actually performing Arneson's job. On the

other hand, Arneson claims that he would only need someone to proofread his work and that this person would only need to know how to read. And, presumably, the necessary proofreading could be accomplished by a part-time worker, such as a college student.

Because the record is unclear as to the specifics of the other suggested accommodations, we remand this case back to the district court for a determination of their reasonability. Specifically, we recommend that the court explore the possibility of a part-time assistant for Arneson, and if that is not a workable solution we recommend looking into the possibility of a transfer back to the Clayton office. We strongly feel that the federal government should be a model employer of the handicapped and should be required to make whatever reasonable accommodations are available.

## III. Conclusion

For the foregoing reasons, the decision of the district court is reversed, and the case remanded to the district court for further proceedings consistent with this opinion.

WHIPPLE, District Judge, dissenting.

While I agree with the majority that the district court stated in its findings that "the plaintiff bears the initial burden of establishing that he is an 'otherwise qualified handicapped individual,'" that is not the way this case proceeded and the cases cited by the district court do not directly address that question.

The *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), case cited by the district court discusses what the term "otherwise qualified" person means, but it says nothing about who has the burden of proof to show that the employee is an "otherwise qualified individual" in the trial of a case under the Rehabilitation Act of 1973.

The *Gardner v. Morris*, 752 F.2d 1271 (8th Cir.1985), case cited by the district court likewise says nothing about who has the burden of proof to establish whether a plaintiff is an "otherwise qualified individu-al" in the trial of a case under the Rehabilitation Act of 1973. The *Gardner* case states as the majority states that the plaintiff is required to produce sufficient evidence to make at least a facial showing that reasonable accommodation is possible. Then the burden shifts to the defendant to show that reasonable accommodation is not possible.

Both the *Southeastern* case and the *Gardner* case appear to proceed by assuming the plaintiff is an otherwise qualified individual and, when the plaintiff makes the facial showing that reasonable accommodation is possible, then shift the burden to defendant. The defendant must then show that the accommodations are not possible at all or are not economically possible, or that the individual is not "otherwise qualified" to participate in the program or to do the job the plaintiff is being denied.

This procedure was followed in this case. Arneson presented his evidence showing he could do the work as a claims representative if he had (1) a telephone headset to free his hands; (2) a quiet work space to diminish distractibility; and (3) clerical assistance to check his work. SSA then presented its witnesses to demonstrate what accommodations had been tried and why the accommodations Arneson claims he needs would not enable him to do the work of a claims representative, even if they were supplied. In other words SSA proved that, even with accommodations, Arneson was not an "otherwise qualified individual" to perform the duties of a claims representative. SSA assumed and met its burden of proof, as the district court found in its ruling. The district court was correct.

A review of the trial transcript reveals that the district court never ordered Arneson to present evidence to prove he was an "otherwise qualified individual" during the presentation of his evidence. At no time before, during, or after the trial did Arneson raise the issue or object to the evidence he was presenting as improperly shifting the burden of proof to him.

Arneson raises it now for the first time on appeal. He should not be permitted to do so because he has waived it. *Browzin v. Catholic University of America,* 527 F.2d 843 (C.A.D.C.1975). Further, even if Arneson were permitted to do so it should be considered harmless error because this was a court-tried case and the witnesses called by Arneson could have been called just as easily by the SSA.

I find there was more than sufficient evidence presented at the two-day trial to allow the district court to reach its decision. The majority opinion to remand the case for further development of whether SSA attempted all the accommodation suggested by Arneson is unnecessary. The evidence heard and presented by the exhibits was more than sufficient to allow the district court to render its opinion.

As to Arneson's claim that a telephone headset is needed, he testified that SSA supplied him a telephone headset but he seldom used it and the majority of the time it was kept by him on a shelf in a storage room. As to his contention that he needs a proofreader to check his work, a reading of the transcript shows that suggestion came from witness Vincent Stalk, a vocational counselor for the Missouri Department of Education at the time who identified himself as an advocate for Mr. Arneson (Tr. 93). There is no indication in the transcript that Stalk has a clear understanding of the duties of a claims representative, and his opinion was further made suspect when he testified that another type of work Arneson could do would be a position as a security guard similar to those "we are familiar with in the Federal Courthouse." (Tr. 96). The Court can only assume that Mr. Stalk is also not familiar with the fact that security guards in federal courthouses are armed with loaded weapons and must know when and how to use them. Mr. Stalk cannot seriously believe that an individual with impairments described by the two neurologists who testified should be placed in a position with the possibility of deciding, under pressure, when to draw and use his weapon.

The district court correctly discounted Mr. Stalks' testimony and relied on the finding of the neurologists. Arneson's neurologist, Simon Hornstein, M.D., testified that appellant suffers from a "genetically determined disorder of language perceptual and motor functions * * * impaired comprehension of spoken and read [sic] language, poor special [sic] and memory, and impaired ability to predict and regulate the power output necessary for the completion of acts." (Tr. 22). Dr. Hornstein further testified this affects Arneson's ability to perform his tasks as a claims representative, in acquiring, arranging and processing data, and would have a considerable effect if he is expected to do it as everyone else does it. Dr. Hornstein stated he believes that Arneson could perform his work with the following accommodations: (1) distraction-free environment, (2) opportunity to extend his work hours on his own, and (3) use of an assistant to read and make sure he understands clearly difficult written passages.

Dr. William M. Landau, Chief of Neurology at Washington University/Barnes Hospital, testified that the term "apraxia" means a combination of disabilities. "Further stated, this is regarding a congeries or collection of symptoms which can be described in non-medical language in terms of difficulty in bringing ideas together, difficulties in writing, distractibility, motor awkwardness." (Landau Depo. p. 8).

It is apparent that Arneson cannot perform his duties as a claims representative without a person assisting him to do all those acts required of a claims representative. The description of the duties and responsibilities of the claims representative is spelled out in four single-spaced pages entered into evidence as Arneson exhibit No. 80. It is described as the keystone position in the SSA.

The claims representative must interview the claimant and take down all the relevant information to determine if the claimant is entitled to benefits, then determine the amount of benefits the claimant shall receive. A mere proofreader to check and see if Arneson had filled out the application

forms correctly is and will be totally inadequate, unless the proofreader sits in on the interview with the claimant to make sure that Arneson gets the information correctly and enters it directly in the computer he must now use. (Testimony at the trial from witness Barbara Foster, an operations supervisor at SSA). (Tr. 217). Thus, there must be another employee with Arneson all the time who is knowledgeable about the qualifications for benefits, and knows how to enter them correctly in the computer—in other words, a claims representative. This is an accommodation not anticipated or allowed under the Rehabilitation Act of 1973 "... the Act does not contemplate that a federal employer will launch major restructuring of projects and facilities disregarding expense of accommodation." *Gardner, supra.*

As to the suggestion that SSA consider moving Arneson back to the Clayton office, the transcript reveals that the move of Arneson to the Maryland Heights Office was in response to Dr. Bane's recommendation because it was a quieter office with fewer distractions than the Clayton office. (Tr. 272). As to Arneson's claim that he should be allowed to take files home or be allowed to work longer hours at the office, the transcript shows that Arneson indicated he would do it, "[b]ut if there was scheduled overtime. I want to be paid for it like everyone else if other people were being paid for it." (Tr. 143, lns 13–15). This belies Arneson's contention that he is willing to do anything on his own to be as productive as the other claims representatives.

The remand to the district court is not necessary, but it will enable the district court to direct the SSA to elicit from its witnesses and exhibits more thoroughly when, why and how each recommendation was tried, or why it did not work or was not feasible. Further, the record should be expanded *from the witnesses* regarding the duties and responsibilities of a claims representative, and what it will cost the SSA in dollars to have a claims representative on the payroll who is not productive and who, without substantial assistance in performing his job, can cause the SSA to pay out large amounts of money to claimants who are approved by Arneson when they should not have been approved.

If there is any weakness in the present record it is the evidence as to why it is not possible for Arneson to take files home to work on and why he can or cannot work on his own time at the office to keep his production up. It should also be made clearer that the way to rate employees' performances was changed in 1982 "where traits were no longer the item to be rated, it was actual job performance tied in directly with the job," (Tr. 320) to give supervisors a more accurate idea of the employees' abilities to actually perform their job by explaining in detail the differences.

I agree with the Court that the Government should bend over backwards to accommodate the handicapped. However, this does not mean the Government should be a floor mat to be walked on by individuals intent on taking advantage of the Government's perceived inability to discharge non-productive or unqualified employees because most Government supervisors will not be persistent in pursuing all the hearings and appeals an employee can pursue to stay on the payroll. The Court's ruling in this case perpetuates that reputation.