Melvin BUCKINGHAM,
Plaintiff–Appellee,

v.

UNITED STATES of America, United
States Postal Service, and Anthony M.
Frank, Postmaster General, Defen-
dants–Appellants.

No. 91–56236.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1993.

Decided July 13, 1993.

John P. Schnitker, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Nick A. Alden and Stuart P. Herman, Herman & Wallach, Los Angeles, CA, for plaintiff-appellee.

Before: HUG, FERGUSON, and O'SCANNLAIN, Circuit Judges.

FERGUSON, Circuit Judge:

Melvin Buckingham sued the Postal Service for a violation of his rights under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., which requires recipients of federal funds, including the Postal Service, to provide reasonable accommodation to handicapped employees. Buckingham requested a transfer from the Post Office in Columbus, Mississippi to one in Los Angeles in order to obtain better medical treatment for his disabling condition, AIDS. The Postal Service refused to transfer Buckingham, alleging that to do so would contravene the rights of other employees under a collective bargaining agreement. After exhausting his administrative remedies, Buckingham brought this suit in district court. The Postal Service moved for summary judgment. The district court denied the motion and *sua sponte* entered summary judgment for Buckingham. The Postal Service appeals the denial of its summary judgment motion and the entry of summary judgment for Buckingham. We affirm as to the denial of the Postal Service's motion and reverse as to the entry of judgment for Buckingham.

## I. Background

Melvin Buckingham acquired HIV, the virus which causes AIDS, while working as a urology technician in the United States Navy. Buckingham was honorably discharged from the Navy and began working as a postal clerk at the Columbus, Mississippi Post Office in May, 1988. After successfully completing his probationary period, Buckingham began experiencing symptoms due to the HIV virus. Buckingham was examined by a physician in Memphis, Tennessee who recommended that he be restricted to light duty for a period of up to a month, until he could be examined by a specialist. The Postal Service temporarily assigned Buckingham to light duty.

Buckingham told the Postmaster in Columbus that he had AIDS and that he wanted to be transferred to Los Angeles so that he could obtain better medical treatment. The Columbus Postmaster told Buckingham that the Memphis division would waive a rule requiring postal workers to have one year of seniority before receiving a transfer. Buckingham wrote a request for transfer that was forwarded to Los Angeles. He then took a leave of absence from the Columbus Post Office and moved to Los Angeles.

Upon his arrival in Los Angeles, Buckingham contacted the Post Office there to ask about his reassignment. The Los Angeles Post Office denied Buckingham's transfer request, relying on a collective bargaining agreement then in effect between the Postal Service and the unions representing postal workers. The parties to the agreement had negotiated a Memorandum of Understanding

(MOU), which was made a part of the agreement, that addressed geographical reassignments. The MOU created a transfer preference scheme for employees with at least one year of seniority. Buckingham had only been working for the Postal Service for five months, and thus the Postal Service asserted that he did not qualify for transfer under the MOU.

Buckingham filed a timely administrative complaint with the Equal Employment Opportunity Commission (EEOC). The Administrative Law Judge (ALJ) issued a recommended decision finding that Buckingham's request for transfer was a reasonable accommodation to his handicap and proposing that the Postal Service not assert the MOU's one-year seniority requirement in cases where it conflicts with obligations under the Rehabilitation Act of 1973. The Postal Service, in its final agency decision, rejected the recommendation of the ALJ. Having properly exhausted his administrative remedies, Buckingham filed this action on February 1, 1990 in district court against the Postal Service for violations of sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794.

The government, representing the Postal Service, moved for summary judgment, arguing (A) that transfers for medical treatment are not required as a matter of law and (B) that transferring Buckingham would contravene the rights of employees with more than one year of seniority under the MOU. The district judge rejected these arguments and *sua sponte* entered summary judgment for Buckingham on February 19, 1991. The district court ordered the Postal Service to reinstate Buckingham at the Los Angeles Post Office and awarded him back pay, attorney's fees, and costs. The district court also enjoined the Postal Service from asserting its policy of requiring one year of seniority for transfers in cases where that policy conflicts with the Postal Service's duty under the Rehabilitation Act to provide reasonable accommodation to handicapped employees. On

March 5, 1991, the government filed a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). On July 23, 1991, the district court denied the motion. On September 18, 1991, the government filed a timely notice of appeal. On the same day, the district court entered an order of stipulation to damages, fees, and costs. On November 4, 1991, the Postal Service filed a second notice of appeal, captioned "Amended Notice of Appeal," which referred to the order of stipulation.

## II. Timeliness and Mootness

Buckingham contends that we do not have jurisdiction over this appeal. He argues that the government's appeal from the injunctive portion of the judgment below is moot, and that the remainder of the appeal is untimely. The government agrees that any issue as to the injunction is moot, but argues that its appeal of the district court's order granting back pay, reasonable attorney's fees, and costs is timely and presents a live issue before this court.

### A. Mootness

On September 4, 1991, Buckingham resigned from the Postal Service. On November 20, 1990, the collective bargaining agreement, upon which the MOU at issue here was based, apparently expired.[1] Thus, Buckingham contends, the Postal Service's appeal of the injunction is moot. The Postal Service agrees that the injunction must be dissolved as moot and requests a *Munsingwear* order vacating the injunctive portion of the district court's order. *See United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). While we concur with both parties that any issue as to injunctive relief is moot, we mention this only to give guidance to the district court on remand. Our reversal of the district court's *sua sponte* entry of summary judgment for Buckingham, upon which the injunction was based, obviates the need for any further discussion of

---

1. In his brief, Buckingham states that the collective bargaining agreement had a term of July 21, 1987 through November 20, 1990, and that there had been no showing by the government that the MOU was extended beyond the expiration date of

the collective bargaining agreement. Appellee's Brief at 10 n. 3. At oral argument, the government had no knowledge of any extension of the collective bargaining agreement or the MOU.

the injunction,[2] as well as the need for a *Munsingwear* order.

## B. Timeliness

 If the government timely appealed the district court's award to Buckingham of back pay, attorney's fees, and costs, we must review the decision below to determine whether that award was in error. The government argues that its "Amended Notice of Appeal," filed November 4, 1991, meets the formal requirements for a proper notice of appeal, even though it was captioned incorrectly. *See Smith v. Barry,* — U.S. —, —, 112 S.Ct. 678, 681, 116 L.Ed.2d 678 (1992). Buckingham contends that this was not a proper notice of appeal and that no proper notice was filed. Both the Postal Service and Buckingham are under the impression that the final judgment from which the Postal Service had to appeal was the district court's September 18, 1991 order stipulating the amount of back pay, attorney's fees, and costs.

Both parties are confused as to the date of the final order. The final judgment for the purposes of filing an appeal was the July 23, 1991 order denying the Postal Service's Rule 59(e) motion to alter or amend the judgment. *See* Fed.R.App.P. 4(a)(4). The Postal Service's September 18, 1991 Notice of Appeal was a timely appeal to that final judgment, and thus our jurisdiction is proper under 28 U.S.C. § 1291.

## III. Merits

 The government argues that it should have prevailed on its motion for summary judgment because (A) transfer for medical treatment is precluded as a matter of law from being a reasonable accommodation and (B) transferring Buckingham would contravene the seniority rights of other employees under the collective bargaining agreement. We review a grant of summary judgment de novo. *Fuller v. Frank,* 916 F.2d 558, 561 (9th Cir.1990).

The government also argues that the *sua sponte* entry of summary judgment for Buck-

ingham was improper because the government was not on notice that it would have to present arguments raising material issues of fact concerning whether Buckingham should have been reasonably accommodated and whether he was or would be able to perform the essential functions of his job.

## A. Transfer for Medical Treatment

The government contends that the Rehabilitation Act of 1973 ("the Act") does not require the Postal Service to transfer Buckingham to Los Angeles so that he can receive better medical treatment. The government argues that there is a per se rule that job transfers are not reasonable accommodations under the Act. The government also argues that Buckingham's transfer request is not a "reasonable accommodation" to his handicap because it is not tied to his ability to perform the essential functions of his job.

 It is undisputed that Buckingham is a handicapped individual who is entitled to protection under the Act. *See Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.,* 840 F.2d 701 (9th Cir.1988) (finding that the Act is applicable to individuals afflicted with AIDS). Section 501 of the Act, 29 U.S.C. § 791, requires federal agencies to act affirmatively to "structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion." *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 306 (5th Cir.1981) (quoting *Ryan v. Federal Deposit Ins. Corp.,* 565 F.2d 762, 763 (D.C.Cir.1977)). The duty on employers thus goes beyond mere nondiscrimination; the regulations promulgated under section 501 emphasize the affirmative obligation to accommodate:

> An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

29 C.F.R. § 1613.704(a).

 We have interpreted the Act to place the burden on plaintiffs to prove that they

---

**2.** Thus we do not reach the government's arguments that the injunction is overbroad and vague.

are qualified handicapped individuals. *Mantolete v. Bolger*, 767 F.2d 1416, 1423 (9th Cir.1985). The regulations define "Qualified Handicapped" individuals as ones who, with or without reasonable accommodation, can perform the essential functions of their job. 29 C.F.R. § 1613.702(f). If accommodation to their handicap is required to enable them to perform essential job functions, then plaintiffs must only provide evidence sufficient to make "at least a facial showing that reasonable accommodation is possible." *Arneson v. Heckler*, 879 F.2d 393, 396 (8th Cir.1989); *see also* 29 C.F.R. § 1613.702(f)(2).

■ An employer, to meet its burden under the Act, may not merely speculate that a suggested accommodation is not feasible. When accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to "gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are *necessary* to enable the applicant to perform the job...." *Mantolete*, 767 F.2d at 1423 (emphasis in original).

■ Given the duty the Act places on employers, there is no merit to the government's argument that there is a per se rule against transfers as reasonable accommodations. We have approved of or recommended a wide range of strategies for the reasonable accommodation of handicapped employees. *See, e.g., Fuller v. Frank*, 916 F.2d 558, 560 (9th Cir.1990) (finding that the Post Office reasonably accommodated an alcoholic employee by repeatedly granting leave and recommending treatment despite recurring relapses); *Lucero v. Hart*, 915 F.2d 1367, 1372 (9th Cir.1990) (county, upon discovering that an employee had failed to qualify for her job, allowed her to retake the test, drove her to the test, and made numerous subsequent offers to allow her to retake the test or obtain alternative employment with the county).

Other circuits have explicitly recommended the consideration of transfers to different locations. *See Langon v. Dep't of Health and Human Services*, 959 F.2d 1053, 1060 (D.C.Cir.1992) (remanding for consideration of whether employee's handicap could be accommodated by working at home); *Arneson*, 879 F.2d at 398 (remanding for the employer to consider transfer to another office and employment of a part-time assistant to reasonably accommodate employee with a neurological disorder).

■ Buckingham is not asking for the type of job transfer that the Supreme Court has suggested might not be required under the Act. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) ("Although [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies."). Buckingham is not asking for a different job. Nor is he asking for a job that is not reasonably available under the Postal Service's existing policies. *See* Part III.B below. He is asking for the same job at a different location. It is not per se unreasonable under the Rehabilitation Act to transfer Buckingham to a location where he can obtain better medical treatment for his handicap.

■ Furthermore, contrary to what the government urges, employers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job. Qualified handicapped employees who can perform all job functions may require reasonable accommodation to allow them to (a) enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees or (b) pursue therapy or treatment for their handicaps. In other words, an employer is obligated not to interfere, either through action or inaction, with a handicapped employee's efforts to pursue a normal life. *See McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir.1992).[3] In some instances,

---

3. *McWright* involved a federal employee whose handicap prevented her from bearing children. The issue was whether the employer's duty to reasonably accommodate McWright's handicap required the employer to change its child care leave application procedures so that McWright

this may require employers to alter existing policies or procedures that they would not change for non-handicapped employees, but "that is the essence of reasonable accommodation." *McWright,* 982 F.2d at 227. We stress, however, that the requested accommodations must be *reasonable,* and that an employer can show that a requested accommodation is unreasonable by demonstrating that it would result in undue hardship for the employer. *See Mantolete,* 767 F.2d at 1423; 29 C.F.R. § 1613.704(c).

B. Rights of Other Employees Under the MOU

 The government also argues that the Postal Service cannot be required to transfer Buckingham because doing so would violate the rights of other employees under the MOU. The MOU states that "[e]xcept in the most unusual of circumstances, if there are sufficient qualified applicants for reassignment at least one out of every four vacancies will be filled by granting requests for reassignment in all offices of 100 or more man years if sufficient requests from qualified applicants have been received." "Qualified applicants" are defined as those with at least one year of seniority. The MOU also states that "[l]ocal economic and unemployment conditions, as well as EEO factors, are valid concerns. When hiring from entrance registers is justified based on these local conditions, an attempt should be made to fill vacancies from both sources."

. For a number of reasons, the district court correctly concluded that the Post Office could transfer Buckingham without violating the rights of other employees. First, the MOU expressly anticipates that valid concerns, including EEO factors, will be considered in filling vacancies. Second, because only one in four vacant positions is reserved for transfer requests from employees with one year of seniority, one of the remaining three positions could be filled by a handicapped transfer who needs to be reasonably accommodated as required by the Act. Filling a vacancy in this way might displace an "entrance" employee, but such a person has no rights under the MOU. Finally, even the one in four preference scheme may be overridden in "the most unusual of circumstances." Certainly, the Postal Service's duty to comply with federal anti-discrimination law is a sufficiently unusual circumstance to warrant the minimal displacement of its transfer preference scheme.

The government cites numerous cases in which courts have held that rights guaranteed by collective bargaining agreements preclude the reasonable accommodation of handicapped employees. The transfer preference scheme prescribed by the MOU is dissimilar to the collective bargaining agreements in those cases. Transferring Buckingham in order to accommodate his disability would not "usurp the legitimate rights of other employees under a collective bargaining agreement." *Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987). *See also Shea v. Tisch,* 870 F.2d 786, 790 (1st Cir.1989); *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1251–52 (6th Cir.1985); *Daubert v. United States Postal Serv.,* 733 F.2d 1367, 1369–70 (10th Cir.1984). In all of these cases, the requested accommodation was explicitly prohibited by the terms of the collective bargaining agreement. The courts therefore held that the employer was not required to contravene the legitimate employment rights of others in order to accommodate a handicapped individual. No such

---

could have the same access to child care leave as employees who gave birth. The district court held that the employer could only be required to make accommodations "related to [a] specific condition of [the employee's] work." The Seventh Circuit disagreed with this standard, holding that "[c]hild care leave is related to work in the relevant sense." *McWright,* 982 F.2d at 227.

The court concluded that "[t]he Rehabilitation Act calls for reasonable accommodations that permit handicapped individuals to lead normal lives, not merely accommodations that facilitate the performance of specific employment tasks."

*Id.* Although this language is rather broad, we agree with the Seventh Circuit that the Act's requirement of reasonable accommodation is not limited to an employee's ability to function on the job. This reading of the Act is consistent with Congress' express purpose of "promot[ing] and expand[ing] employment opportunities in the public and private sectors for handicapped individuals." 29 U.S.C. § 701(8). Furthermore, we have found nothing in the Act or its legislative history to indicate that Congress intended to limit the employer's duty of reasonable accommodation to the facilitation of employment tasks.

contravention is required in order to accommodate Buckingham.

### C. *Sua Sponte* Summary Judgment

The district court heard the government's motion for summary judgment and, without notice to the government, the court *sua sponte* granted summary judgment for Buckingham.

As discussed above, the district court is correct in its conclusions that transfer for medical treatment can be a reasonable means of accommodating a handicapped employee and that the MOU does not preclude such accommodation. The matter does not end there, however. The government argues that the *sua sponte* entry of summary judgment for Buckingham deprived it of the opportunity to raise disputed issues of material fact concerning Buckingham's claim that he would receive better medical care in Los Angeles and that, once there, he was or would be able to perform the essential functions of his job as a mail clerk.

*Sua sponte* entry of summary judgment is proper if "there is no genuine dispute respecting a material fact essential to the proof of movant's case...." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982). However, a litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue: "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Portsmouth Square v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir.1985).

We sympathize with the district court's frustration with the Postal Service for refusing to transfer Buckingham by relying solely on a groundless interpretation of the MOU. The Postal Service, by taking this position, delayed a determination on the merits of Buckingham's rights under the Act. This delay is particularly troublesome in light of Buckingham's affliction with AIDS, a progressively debilitating and ultimately fatal disease.

However, facts remain in dispute which must be resolved in Buckingham's favor in order for him to prevail. The government did not receive sufficient notice of the district court's potential entry of summary judgment against it and therefore did not have the opportunity to present arguments as to whether: (1) Medical facilities in Los Angeles could provide Buckingham with better medical care than he would have received in Mississippi; (2) Buckingham was or would be able to perform the essential functions of his job.

The district court erred in concluding that the government should be foreclosed from disputing these allegations because the sole reason the Postal Service gave to Buckingham for denying his request was the MOU's one-year seniority requirement. The district court improperly relied on *Norris v. City and County of San Francisco,* 900 F.2d 1326, 1331 (9th Cir.1990), which holds that information unknown to an employer at the time of an allegedly discriminatory decision could not have entered into the decision and was therefore irrelevant. The government is not attempting to justify a discriminatory decision, but to rebut Buckingham's claims that he deserves to be, and can be, reasonably accommodated. *See Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir.1985) (evidence acquired after Postal Service had made its decision is admissible to rebut an employee's claim that she was otherwise qualified).

### D. Remand

On remand, Buckingham may meet his burden in either of the following two ways. First, he may argue that the accommodation he seeks is necessary to enable him to perform the essential functions of his job. In order to succeed, he must show that the suggested accommodation would, more probably than not, have resulted in his ability to perform the essential functions of his job. The plaintiff is required to make a showing of probability, rather than certainty, because the employer's refusal to accommodate has deprived the plaintiff of the opportunity to make a more definite showing that he or she could, with accommodation, become qualified for the job. *Cf. Arneson v. Heckler,* 879 F.2d 393, 396 (8th Cir.1989) (holding that plaintiff does not have the initial burden of establish-

ing that he could perform the essential functions of the job with accommodation).

Buckingham may also argue that he was already able to perform the essential functions of the job of being a mail clerk, but that he required reasonable accommodation in order to pursue treatment or therapy for his handicap. *See supra* note 3 and preceding text. If he makes such an argument, then he must show that (1) there is a causal connection between his handicap and his need for the requested accommodation, and (2) it is more likely than not that the accommodation will confer the claimed benefit. The burden then shifts to the government to show that such accommodation imposes an undue hardship on the Postal Service. *Mantolete,* 767 F.2d at 1423.

We note, however, that according to an independent medical examiner retained by the Postal Service, Buckingham was able to perform the essential functions of his job after he moved to Los Angeles and would retain such capacity for at least two years so long as he continued to receive medical treatment and follow-up, including testing and therapy.[4] On the evidence now in the record, Buckingham has met his burden under the first alternative discussed above, and thus would seem to merit summary judgment. We remand because the government was not given an opportunity to controvert the largely undisputed facts now in the record.

### IV. Conclusion

We AFFIRM the district court's denial of summary judgment to the Postal Service, REVERSE the *sua sponte* grant of summary judgment for Buckingham, and remand for further proceedings consistent with this opinion.

O'SCANNLAIN, Circuit Judge, specially concurring

I concur in the opinion with the exception of Part III.D.

---

4. Buckingham worked at the Los Angeles Post Office for five and one half months after he was reinstated pursuant to the district court's injunction. He then left of his own accord.