**Dino CADELLI, Plaintiff,**

v.

**FORT SMITH SCHOOL DISTRICT, Defendant.**

**Civ. No. 92–2060.**

United States District Court, W.D. Arkansas, Fort Smith Division.

Sept. 30, 1993.

---

Gregory T. Karber and Eileen Kradel, Pryor, Barry, Smith, Karber & Alford, Fort Smith, AR, for plaintiff.

Richard L. Spearman, Thompson & Llewellyn, P.A., Fort Smith, AR, for defendant.

## ORDER

HENDREN, District Judge.

### Introduction

Plaintiff, Dino Cadelli, brings this action pursuant to § 504 of the Rehabilitation Act of 1973, alleging that he suffers from a mental condition known as Anxiety Panic Disorder and, therefore, is an "otherwise qualified individual with handicaps" within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act"). Plaintiff alleges that the defendant (his former employer), the Fort Smith School District ("School District"), discriminated against him because of his alleged handicap when it failed to accommodate his handicap and forced him to retire in violation of the Rehabilitation Act. The School District denies these allegations.

### Jurisdictional Statement

This Court has subject matter and personal jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### Procedural Background

Plaintiff sought and received Disability Retirement under the Arkansas Teacher Retirement System with his retirement date being March 15, 1991.

By letter of November 27, 1991 (Defendant's Exhibit 24), plaintiff filed his complaint with the School District, pursuant to the complaint resolution procedure utilized by the School District, alleging, *inter alia*, that the School District had violated the Rehabilitation Act by (a) failing to give to him a summative evaluation in a timely manner before plaintiff sought and received disability retirement; and (b) refusing to allow him a

one-year sick leave. Plaintiff therein contended that these two alleged actions or inactions by the School District constituted "... an intentional act by the Fort Smith School Board and Dr. Benny Gooden to terminate (plaintiff) as a teacher of the Fort Smith School System." (Defendant's Exhibit 24, page 2).

After a hearing held December 17, 1991, the Equity Hearing Committee set up under the School District's procedures made the following decision which was then approved by the Superintendent of Schools:

Mr. Cadelli was not discharged by the District, but rather he voluntarily sought disability retirement. Mr. Cadelli's doctor reported disability retirement was necessary because he was "disabled from performing his usual job as a teacher." His disability retirement which was granted by the Teacher Retirement System on March 7, 1991, made the request for a year's leave of absence and the summative evaluation unnecessary. Mr. Cadelli was not, in this committee's opinion, discriminated against by the Fort Smith School District. Therefore, his complaint was not substantiated under § 504 of the Rehabilitation Act of 1973. (Defendant's Exhibit 25).

By letter of January 15, 1992, plaintiff appealed the decision of the Committee and Superintendent to the Board of Education of the School District. (See Defendant's Exhibit 26).

After a hearing on January 27, 1992, at which plaintiff appeared with counsel, the School District's Board of Education essentially affirmed and adopted the said decision, saying:

The Board of Education has considered the contention of Dino Cadelli that his rights pursuant to § 504 of the Rehabilitation Act of 1973, have been denied. It is the finding of the Board that Mr. Cadelli was not discharged by the District. Mr. Cadelli voluntarily sought disability retirement and the effective date of his retirement was March 15, 1991. In support of his Disability Retirement Application, Mr.

Cadelli received a report from David Kocher, M.D., who found Mr. Cadelli to be disabled from performing his usual job as a teacher because of increased problems with concentration and memory. During the process of making a claim of discrimination, Mr. Cadelli has sought various remedies. Those remedies include a request that he be allowed to take a year's leave of absence, a request that his summative evaluation for the year 1990–91 be completed, and now a request for reinstatement.

Mr. Cadelli was not discriminated against by the Fort Smith School District. His claim of discrimination pursuant to § 504 of the Rehabilitation Act of 1973 is without factual support, and he is not entitled to any of the requested relief.

The vote of the Board to adopt the above findings is 6/0.

(Defendant's Exhibit 27).

Plaintiff did not further appeal the School District's decision but, instead, filed this action.

### Controlling Authority

§ 504 of the Rehabilitation Act prohibits discrimination in the workplace against a person with handicaps. It states:

"No otherwise qualified individual with handicaps in the United States, as defined by Section 7(8) [29 U.S.C.S. § 706(8)], shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

29 U.S.C. § 794.[1]

In view of the uncontested fact that plaintiff retired from teaching with the School District on March 15, 1991, the court must first determine whether plaintiff was, in fact, *excluded*, within the meaning of § 504, from further teaching with the School District.

---

1. By a 1992 amendment, the words "a disability" and "disability" have been substituted for the words "handicaps" and "handicap."

If plaintiff's retirement was indeed voluntary, then it would appear he was not so excluded within the meaning of the said Act and the inquiry could end there.

If the retirement was not voluntary and/or was forced or coerced, then the court must then determine whether plaintiff is an "individual with handicaps" within the meaning of § 504 and, possibly, whether plaintiff is "otherwise qualified" within the meaning of said § 504.

These considerations will be discussed in detail and with reference to applicable authorities below.

### Findings of Fact

1. Plaintiff holds a Masters degree in science and a Masters degree in Education with a counseling major. He is certified by the State of Arkansas to teach chemistry, biology, general science, life science, physiology and as a school counselor.

2. Plaintiff had taught in the School District for some twenty-two and a half years before he retired effective March 15, 1990.

3. Plaintiff contends he has suffered from a condition known as Anxiety Panic Disorder (APD) all his life. He says the condition, when untreated, caused him to be nervous around groups of people, caused his hands to shake and caused periods of extreme anxiety. He further says that stressful situations aggravate his condition even when he is on medication designed to control it.

4. In approximately 1971, plaintiff was seriously injured when he was struck by a car. According to one of his physicians, Dr. David Kocher, plaintiff has ever since suffered and now suffers memory loss, concentration difficulties, anxiety and emotional problems as a result of such injuries.

5. Plaintiff says his condition, (APD), is chronic and deteriorating. Plaintiff's doctors have placed him on a drug called Nardil which allows him to cope with most everyday life situations. Plaintiff also suffers from chronic high blood pressure which cannot always be controlled.

6. Plaintiff was employed by the School District as a teacher beginning in 1968 and continued such employment until March 15, 1991 when he retired after obtaining a disability retirement from the Arkansas Teacher Retirement System.

7. Plaintiff began his career with the School District at Kimmons Junior High School where he taught general science and life science for approximately five years.

8. Following his automobile accident, plaintiff taught at the School District's Alternative School for two years and then was transferred to Southside High School for several years where he taught general science, earth science, biology, and health careers and technology.

9. Plaintiff requested and was granted a transfer back to Kimmons Junior High School in 1984, and there taught life science, general science and health.

10. Following a personality conflict with his principal at Kimmons during the 1988–89 school year, plaintiff requested a transfer from his position at Kimmons for the coming year.

11. In response to plaintiff's request, he was transferred to Northside High School for the 1989–90 school year although there were then no academic staff openings at Northside for classes plaintiff was qualified to teach.

12. The School District created a position for plaintiff at Northside during the 1989–90 school year in which he had no teaching assignments but was basically assigned to patrol the Northside campus.

13. During the 1989–90 school year, plaintiff let it be known to his principal at Northside, Bill Bardrick, and to others that he would very much like to again teach science.

14. Bill Davis, a teacher for some 29 years and head of the Science Department at Northside during both the 1989–90 and 1990–91 school years, did not initially suggest that plaintiff be given science teaching assignments for the 1990–91 year although he was aware of plaintiff's desires. However, knowing that his principal, Bill Bardrick, needed some help in the Math department and that one of his science teachers, Bill Byers, was both qualified and desirous of teaching Math,

Davis suggested that plaintiff be allowed to teach science and that Byers be assigned to teach Math and other subjects. It was Davis' belief that these suggestions would be welcomed by both Byers and plaintiff and would accommodate their respective desires.

15. As a result of Davis' suggestion, plaintiff was assigned to teach six periods of life science at Northside during the 1990–1991 school year.

16. Plaintiff encountered discipline problems in his science classes which he says aggravated his mental condition and caused him to be nervous and unable to sleep. He claims his blood pressure increased and that he had to take additional medication to keep it under control.

17. During the first four months of the 1990–91 school year, plaintiff referred 140 students to the Northside principal's office for discipline problems, most of which were relatively minor.

18. Various individuals counseled with plaintiff on techniques for maintaining class control.

19. On October 30, 1990, plaintiff applied for a position as a counselor at an Alternative School. The Alternative School is a school for students who have proved to be problems for teachers in regular classes. The Alternative School students frequently disrupt classes and antagonize the teachers and other students.

20. The school district selected another applicant for the new position at the Alternative School. The applicant selected had a background in police work and seemed otherwise qualified for the task of dealing with problem students and keeping proper discipline.

21. Plaintiff was not considered a good choice for the Alternative School position since he had experienced problems with discipline in a regular classroom setting and the School District believed plaintiff would not be able to handle the even greater stress associated with the Alternative School.

22. During the 1990–91 school year, plaintiff sought a mid-year change of assignments requesting that he not have six (6) science classes but, rather, that his academic load be reduced to not more than four or possibly five academic classes. The Northside principal, Bill Bardrick, denied plaintiff's request and explained he could not feasibly change the Northside schedule during the course of the year without undue disruption of both faculty and students. Instead, Bardrick advised plaintiff to try to make judicious use of the School District's sick leave policy and to take off from time to time so as to try to get through the rest of the school year. Bardrick told plaintiff he would then try to make changes in plaintiff's schedule for the following year.

23. On October 24, 1990, plaintiff wrote Bardrick seeking information on a disability retirement from the Arkansas Teacher Retirement System. In this letter (Plaintiff's Exhibit 3), plaintiff indicated that if he couldn't make it through the school year, he wanted to be in a position to retire.

24. By letter to the Arkansas Teacher Retirement System dated October 26, 1990 (Defendant's Exhibit 11), plaintiff indicated he wished to apply for "medical disability" because of some "very serious health problems" and asked that he be advised as to how to go about it and that appropriate forms be sent to him.

25. No one connected with the School District brought up the subject of disability retirement to plaintiff and the subject was first broached between the parties by plaintiff, himself. No one connected with the School District suggested or urged that plaintiff seek disability retirement.

26. In response to plaintiff's request to Bardrick about disability retirement, a meeting occurred between plaintiff and Dr. Johnny Owen, Deputy Superintendent of Schools, and Dr. Patricia J. Jackson, Assistant Superintendent Personnel & Support Services, on or about December 15, 1990.

27. At the December 15, 1990, meeting, plaintiff asked about applying for the counselor position at the new Alternative School. Owen and Jackson were aware of plaintiff's application which had been filed prior to November 8, 1990. (See Defendant's Exhibit 15). Owen and Jackson discouraged plaintiff

with respect to his application because they felt he was already having trouble in regular classes and they felt the counseling position would not be a good one for him.

28. At the December 15, 1990, meeting, plaintiff asked Owen and Jackson what he could do about the possibility of disability retirement. Owen responded that he could either try to finish out the 1990–91 year and then retire or he could go ahead and retire right then.

29. On December 21, 1990, plaintiff applied for a disability retirement from the Arkansas Teacher Retirement System claiming he was incapacitated from further performance of his duties as a teacher. (See Plaintiff's Exhibit 4). In support of his application, on December 21, 1990, Dr. David B. Kocher wrote a letter (Defendant's Exhibit 12) which stated, in part:

> There is no question in my mind that [plaintiff] is disabled from performing his usual job as a teacher; the main reason being his increased problems with concentration and memory. This along with the CNS damage which affects his emotions would make him disabled. In addition, his blood pressure is virtually unmanageable at this time.

A copy of Dr. Kocher's December 21, 1990 letter (Defendant's Exhibit 12) was forwarded to the School District.

30. On January 18, 1991, Dr. Kocher again wrote a letter (Defendant's Exhibit 13) to the Arkansas Teacher Retirement System in support of plaintiff's application for benefits, saying:

> I have seen [plaintiff] as a patient now since 1979 and have had a chance to observe him closely over this time period. The patient, during this time period, has demonstrated to me severe memory loss with a lot of difficulty concentrating. He also has difficulty controlling his anxiety. He is seeing both neurologists and neurosurgeons, and psychiatrists here in the Fort Smith area concerning this.
>
> It appears that most of his problems date back to an automobile accident which he had in 1979 which has caused his mental problems. Because of this, the patient has to take a very strong medication, i.e., Nardil to cope with everyday life. He mainly has been followed by Dr. Max Baker, psychiatrist, here in Fort Smith.
>
> As time goes on, [plaintiff] is in less control of his emotions. His teaching assignment presently is intolerable for him. He cannot concentrate and cannot cope with the work load which is placed on him. I do not think this is nearly so much the fact that he has a heavy work load this year as due more to the fact that each year he seems to have more difficulty with concentration and controlling his emotions and this has gone to the point where he is incapacitated. I think [plaintiff] would have trouble doing any type of work which had even a minimal amount of stress to it as his mental condition appears to be deteriorating.
>
> \* \* \* \* \* \*
>
> His blood pressure over the years has been more difficult to control. A lot of this is related to stress. I feel that with time we should be able to achieve better control of his blood pressure, but at this time it is proving most difficult.
>
> I know of no one who is more motivated to work and who would like to work more than [plaintiff]. On the other hand, it appears in my opinion that he can no longer continue to be a teacher because of the reasons listed above. I feel quite strongly that his disability should be approved.

31. By letter of March 7, 1991, (Defendant's Exhibit 8) the Arkansas Teacher Retirement System approved plaintiff's disability retirement.

32. Inherent in the decision by the Arkansas Teacher Retirement System to grant plaintiff disability retirement is the finding that plaintiff met the statutory requirements of being "physically or mentally totally incapacitated for the further performance of duty, that the incapacity will probably be permanent, and that the member should be retired." A.C.A. § 24–7–704(a)(1).

33. Both the School District and plaintiff received notice that plaintiff's disability retirement had been approved on the same day, March 11, 1991.

34. By letter dated March 11, 1991, and hand delivered to the School District on that same date, plaintiff notified the School District that he was taking disability retirement effective March 15, 1991. (See Defendant's Exhibit 9).

35. By letter of March 8, 1991, plaintiff had requested the School District to grant him a one year leave of absence. (See Defendant's Exhibit 10). This letter, however, was not received by the School District until March 12, 1991, the day after plaintiff had both been notified of the approval of his disability retirement and had notified the School District that March 15, 1991, would be his last day.

36. Plaintiff's acceptance of the disability retirement rendered moot his request for a one-year leave of absence and made it unnecessary for the School District to address the same.

37. Since plaintiff's retirement from employment with the School District on March 15, 1991, he has been unemployed and currently receives benefits of $966.42 per month. As of the date of trial, no physician has certified plaintiff as being able to return to work.

38. Plaintiff voluntarily retired from service with the School District and was not forced or coerced to do so.

39. Plaintiff is not an "otherwise qualified individual with handicaps" within the meaning of § 504 of the Rehabilitation Act.

40. Even if the facts established that plaintiff is an "otherwise qualified individual with handicaps" within the meaning of § 504 of the Rehabilitation Act (and, as above found, they do not), the proof did not establish that the School District refused to accommodate his condition thereby forcing his retirement in violation of the Rehabilitation Act.

## Conclusions of Law

1. Since plaintiff's retirement from teaching with the School District was voluntary, he was not "excluded from participation" by reason of a handicap and he is not entitled to the relief he requests. *Arneson v. Heckler*, 879 F.2d 393 (8th Cir.1989) if the choice to retire is freely made, plaintiff has "no right after that event to further employment by the Federal Government," citing *Taylor v. United States*, 219 Ct.Cl. 86, 591 F.2d 688, 690 (1979). As above stated, in determining whether plaintiff's retirement was voluntary, the court looked at whether the retirement was obtained by duress, time pressure or deception.

> The general principle is that an action is voluntary if the employee is free to choose, understands the transaction, is given a reasonable time to make his choice, and is permitted to set the effective date … * * * The fact that the employee may be faced with an inherently unpleasant situation or that his choice may be limited to two unpleasant alternatives does not make the resulting action an involuntary action. * * *

*Taylor v. United States*, 219 Ct.Cl. 86, 591 F.2d 688, 690–91 (1979) (quoting from Federal Personnel Manual (FPM) Supp. 752–1, subparagraph 51–2). "An action is not voluntary if it is produced by government conduct which is wrongful." *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386, 1389–90 (1977).

The facts in the case persuade the court that the School District did not force plaintiff into an involuntary retirement.

When plaintiff had problems at Kimmons Junior High, he requested a transfer to another school to teach biology or life science. This request was neither made nor granted during a school year, but after a year came to a close.

Although there were no suitable teaching slots open for plaintiff at another school, the School District obliged plaintiff the following school year by transferring him to Northside High School and specifically creating a job there for him.

During his first year at Northside (1989–90) after the transfer from Kimmons, plaintiff continually asked for an assignment teaching science classes. The request was not granted during that school year but, for the next year, the School District once again obliged plaintiff by assigning him to teach six periods of life science for the 1990–91 school year.

When plaintiff began experiencing class control problems with his assignment during the 1990–91 school year, at least two individuals counseled with plaintiff with ideas designed to help him control his classes. The School District also acted to reassign several troublesome students in various of classes taught by plaintiff with the idea of separating them from each other in order to make it easier for plaintiff to control them.

While the School District could not feasibly reassign plaintiff during the course of the 1990–91 school year, Northside principal, Bill Bardrick, did encourage plaintiff to take advantage of the School District's sick leave policy and told plaintiff he would try to give him a different assignment the following year. This action was consistent with the School District's handling of reassignment requests from plaintiff in the past.

Based upon a review of the evidence and the history of the relationship between plaintiff and the School District, the court is convinced that the School District reacted reasonably and responsibly to plaintiff's repeated requests for reassignment and that its failure to reassign him in the midst of an academic school year was consistent with its previous practices and was not designed to and did not serve to force plaintiff to take disability retirement.

■ 2. Although unnecessary to the court's decision in view of its first conclusion of law as set forth above, the court notes that even if the evidence had shown that plaintiff did not retire voluntarily, the court is not convinced that plaintiff is an "individual with handicaps" within the meaning of § 504 of the Rehabilitation Act.

In order to avail himself of the protection of § 504, plaintiff must first show by a preponderance of the evidence that he is a handicapped person within reach of the statute. *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986); *Torres v. Bolger,* 781 F.2d 1134, 1135 (5th Cir.1986); *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir. 1985). An individual with handicaps is defined as:

... any person who (i) has a physical or mental impairment which substantially lim-

its one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B).

"Major life activities" are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 34 C.F.R. § 104.3(j)(2)(ii).

The courts have consistently held that it is not a substantial limitation on one of life's activities when an impairment prevents a person from performing a particular job or position. *See Forrisi,* 794 F.2d at 934–35; *Jasany,* 755 F.2d at 1249; and *Mackie v. Runyon,* 804 F.Supp. 1508, 1509–10 (M.D.Fla.1992).

The testimony of plaintiff was essentially that his impairment only affected his ability to perform his 1990–91 assignment of teaching six life science classes. While so contending, he at the same time asked to be considered for a position at an alternative school whereat he would be required to deal with problem students who would be far more difficult to manage than would his regular students. It seems to the court that if plaintiff's alleged APD impairment would make it impossible for him to continue teaching life science classes to students exhibiting average deportment and effort, it would likewise make it impossible for him to teach or counsel students identified and isolated as being problem students with histories of deplorable deportment and poor learning efforts.

There was no evidence that plaintiff's alleged APD impairment affected any of his earlier assignments or that it affected his ability to seek other employment.

The medical opinions plaintiff acquired and offered to the Arkansas Teacher Retirement System in support of his application for disability retirement, did indicate the physician's belief that plaintiff was then disabled from further teaching. However, those opinions were never supplied to the School District before plaintiff commenced his efforts to achieve disability retirement. Moreover, if that in fact was the case and plaintiff could

therefore be properly considered as an "individual with handicaps" within the meaning of § 504, it would apparently follow pursuant to those medical opinions that plaintiff could not be considered to be "otherwise qualified" as required by said § 504.

The evidence therefore indicated that plaintiff's alleged impairment related only to his abilities to teach a certain number of a certain kind of class during a particular school year. In such case, plaintiff's major life activities were not substantially affected and he is not an "individual with handicaps" within the meaning of said § 504.

■ 3. Even if it were to be assumed that plaintiff indeed qualifies as an "individual with handicaps" within the meaning of said § 504, the medical opinion of plaintiff's physician, Dr. David Kocher, indicates that plaintiff's difficulties with concentration and controlling his emotions have deteriorated "to the point where he is incapacitated . . ." and can "no longer function as a teacher."

Under § 504 an "otherwise qualified" individual is one who is able to meet all of a program's requirements in spite of his handicap. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). If an employee cannot perform the essential functions of the job, then he has no protection under § 504. *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988). Based upon Dr. Kocher's findings, plaintiff can no longer perform the essential functions of teaching. Thus, Plaintiff's § 504 claim would have to fail by reason of this analysis if it were not otherwise unsound.

■ 4. Even if the court were convinced that plaintiff's retirement was not voluntary; that he is an "individual with handicaps" within the meaning of § 504; and that he is "otherwise qualified" within the meaning of said § 504, his claim would still fail on the evidence presented at trial.

To avoid violation of § 504, 34 C.F.R. § 104.12 requires an educational entity receiving federal funds to make "reasonable accommodations to the known physical or mental limitations" of an otherwise qualified handicapped employee. It would seem obvious that the duty of accommodation applies only to the handicaps which are known to the employer.

In the instant case, although plaintiff had been under medical care for several years, he did not present any medical evidence to the School District detailing the extent of his alleged handicaps or his need for accommodation.

Prior to October 24, 1990, plaintiff's only mentions of his mental condition were to tell Bill Bardrick he had a "nerve problem" and to informally mention to various people problems he had stemming from the 1971 auto accident.

On October 24, 1990, plaintiff asked about possible disability retirement indicating he suffered from "Anxiety Panic Disorder." Plaintiff offered no medical evidence to the School District of his condition or his need for accommodation except to later provide, in connection with his application for disability retirement, the School District with a copy of his application which included a December 21, 1990 letter from Dr. David Kocher claiming plaintiff was totally disabled from teaching because of his increased problems with concentration and memory loss. This was the only medical evidence presented to the School District dealing with plaintiff's condition and it showed plaintiff to be unable to carry on his duties as a teacher. The letter made no mention of any actions which were necessary to accommodate plaintiff.

Although the School District had no knowledge of the extent of plaintiff's alleged handicap, it had nevertheless engaged in reasonable accommodation of plaintiff's various requests over his teaching career as set forth in the findings of fact hereinabove. The only requests denied to plaintiff were his mid-year request for reassignment and his request to be a counselor at the Alternative School. The court does not believe these denials were unreasonable under the circumstances.

In sum, the court believes the School District tried in every reasonable manner to accommodate plaintiff although it was not required, by § 504 of the Rehabilitation Act or any other law or regulation, to do so.

Finally, the undisputed evidence is that no one connected with the School District tried to force or persuade plaintiff to seek disability retirement. Witnesses for the School District testified, without contradiction or challenge, that had plaintiff not chosen to retire when he did and had he not presented medical opinion evidence indicating he is no longer capable of teaching (which evidence, by the way, has never been altered or changed), the School District would have kept him on as a teacher and tried to place him in a teaching position which he could handle to finish out his career.

The court therefore finds that plaintiff's complaint is not supported by the evidence presented in light of the applicable law and that plaintiff therefore should take nothing by reason thereof.

IT IS THEREFORE ORDERED AND ADJUDGED that judgment be entered in accordance with this opinion for the defendant, Fort Smith School District, and that plaintiff's complaint be, and it hereby is, dismissed with prejudice.

IT IS SO ORDERED.