**Robert McADAMS, Plaintiff–Appellee,**

v.

**UNITED PARCEL SERVICE, INC., Defendant–Appellant.**

No. 93–3346.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1994.

Decided July 29, 1994.

Daniel G. Wilczek, Minneapolis, MN, argued (Ronald J. Lee, on the brief), for appellant.

Carol B. O'Toole, Minneapolis, MN, argued, for appellee.

* THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The district court, in its findings and conclusions, emphasized that neither UPS nor Mc-

Before FAGG, and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

BOGUE, Senior District Judge.

Plaintiff Robert McAdams, a long-time employee of defendant United Parcel Service, Inc. (UPS), was diagnosed with multiple sclerosis (MS) in 1986. He took ten weeks off, then returned to work. In November 1987 a UPS physician, Dr. Downs, put McAdams on an eight-hour day/five-day week work restriction. If problems such as a flare-up of his MS arose, he was to cut back to 4 hours/day. According to Downs' testimony in this matter, the eight-hour restriction was a qualitative recommendation, and occasionally working over eight hours would not violate the spirit of his limitation.[1] Dr. Downs renewed this work restriction in November 1988. UPS complied with the restriction and adjusted plaintiff's schedule accordingly. The district court found, and we agree, that the eight-hour restriction was reasonable under the circumstances.

The timeframe relevant to this lawsuit is May 1991 to December 1992, when plaintiff worked as a supervisor in UPS's on-call air service at the Minneapolis/St. Paul airport. During this time, he trained and supervised drivers (often by accompanying them) who would pick up parcels from customers and transport them to the airport for priority delivery. UPS directed plaintiff and the other supervisors, who were his peers, to do what they could to insure that his eight-hour work restriction was honored.

Plaintiff's peers in the on-call air service routinely worked more than eight hour days. Also, because of the nature of the overnight delivery business, there were often occasions when the driver whom plaintiff was accompanying would be dispatched to make extra pickups before returning to the airport at the end of a shift. Most of the time McAdams directed the driver to return him to the work station, then go on and do the pickup without him. This procedure was exactly what UPS

Adams was aware that the eight-hour restriction was a flexible one. We do not agree that this was significant, given the undisputed fact that in reality the restriction was not meant to be absolute.

had directed, and plaintiff had full authority to implement it because the drivers were his subordinates and the dispatchers were his peers. However, on several occasions plaintiff apparently felt that he was not in a position to demand this accommodation because of the exigencies of the particular situation. On these occasions, he worked over eight hours total. The district court found that there were seven occasions in 1991 and one in 1992 when McAdams worked over eight hours. After learning about the 1991 overtime incidents, plaintiff's immediate supervisors again told him to direct his drivers to return him to the airport rather than keeping him late, and they reiterated their directive to plaintiff's peers not to overdispatch him.

Notwithstanding the occasions on which he worked more than eight hours, plaintiff did not report flareups of his MS to anyone at UPS. Regular medical checkups confirmed that the disease was in remission, and he did not submit medical evidence of any deterioration since 1987. Accordingly, the district court found that his condition had not worsened as a result of UPS's actions.

▮ In March 1992 McAdams commenced this action against UPS, alleging violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363.01 *et seq.* (hereinafter MHRA) and other statutory and common law claims. All except the MHRA claim were dismissed.[2] The MHRA claim was tried to the court, which concluded that UPS had violated the eight hour restriction and awarded $35,000 in damages for pain and suffering. UPS now appeals this decision, arguing that under the circumstances it did nothing inconsistent with the MHRA.

First we outline the applicable standard of review:

> Although a district court's findings of fact are not to be set aside unless clearly erroneous, we believe that this matter involves an application of the law to the undisputed factual determinations made by the [district] court. As such, the district court's conclusion with regard to whether the accommodations made by the [employer] were reasonable ... [is] reviewable de novo.

*Arneson v. Heckler,* 879 F.2d 393, 397 (8th Cir.1989).[3] *See also, Carter v. Bennett,* 840 F.2d 63, 67 (D.C.Cir.1988) (application of appropriate legal principles regarding reasonable accommodation to the particular facts of the case not limited by the clearly erroneous standard). The parties agree, as the district court held, that the eight-hour restriction was a reasonable accommodation. Further, defendant does not dispute the district court's factual determinations regarding the number of times McAdams worked over eight hours, or the circumstances surrounding those incidents. Rather, the thrust of defendant's appeal is its claim that the district court erred in its conclusion that defendant violated the MHRA by not taking sufficient steps to implement the restriction.[4]

Under the MHRA, an employer such as UPS must "make reasonable accommodation to the known disability of a qualified disabled person[.]" Minn.Stat. § 363.03, subd. 1(6). "'Reasonable accommodation' means steps which must be taken to accommodate the known physical or mental limitations of a qualified disabled person." *Id.* It is undisputed that plaintiff is a qualified disabled person within the meaning of the MHRA.

**2.** Plaintiff has not cross-appealed the district court's dismissal of the remaining claims.

**3.** Because of the paucity of published caselaw on the MHRA, we look to precedent arising from similar federal laws, such as the Rehabilitation Act, 29 U.S.C. § 794. This practice has been sanctioned by Minnesota's courts. *See State by Cooper v. Hennepin County,* 441 N.W.2d 106, 110 (Minn.1989).

**4.** Alternatively, defendant argues that plaintiff was the master of his own work restriction—and

that he remained free in each instance to ensure compliance with the restriction by directing the driver he accompanied to return him to the airport before making the run. Therefore, defendant argues, the incidents where plaintiff worked over eight hours were simply a matter of his own choosing not to utilize the proffered accommodation. *See, e.g. Crewe v. United States Office of Personnel Management,* 834 F.2d 140, 143 n. 7 (8th Cir.1987). We do not reach this issue, because our conclusion on the primary contention is dispositive.

The testimony of the doctors in this case demonstrates, and the district court agreed, that the eight hour work restriction was not absolute. Dr. Downs, who imposed the restriction, testified that it was not a strict limit, and that occasionally working over eight hours would not violate the restriction unless plaintiff had problems with increased manifestation of his MS. No such problems were noted. Even plaintiff's treating physician testified that the circumstances under which plaintiff worked over eight hours would probably not cause a risk of exacerbating his MS. Plaintiff did not suffer—much less report to UPS—any flareups as a result of the occasions he worked over eight hours. Further, as the district court noted, plaintiff offered no medical evidence of deterioration in his condition since 1987.

The district court's award to plaintiff was not directly based on violation of the eight-hour restriction by UPS, but rather on its finding that plaintiff's perception that he was violating the restriction caused him stress, which could exacerbate his MS. Further, the court noted that plaintiff suffered stress because of the lack of a dependable and regular schedule.[5] There was no evidence or finding below that UPS was ever made aware of: 1) plaintiff's stress; 2) a requirement that he be insulated from stress; or 3) the necessity of a dependable and regular schedule. As noted above, the MHRA requires employers to accommodate the *known* disabilities of their employees. Minn.Stat. sec. 363.03, subd. 1(6) (emphasis added). Defendant did accommodate McAdams' known disability by keeping his schedule at eight hours and directing all those involved to do whatever was necessary to enforce the restriction. Because plaintiff did not demonstrate that his needs to avoid stress and have regular hours were a "known disability," he did not meet his burden of showing that UPS violated the MHRA.

Plaintiff offered no evidence that the eight-hour accommodation was ever made unavailable to him, or that he suffered any reprimand or chastisement on the occasions that he did utilize the accommodation. It was only plaintiff's own perception of the difficulties he would cause the company by having the driver return him to the airport, and nothing UPS did directly, that caused him to feel that he could not always use this accommodation. Considering the time-sensitive and often hurried nature of UPS's business, it would be unreasonable to force it to insulate the drivers plaintiff supervised, in addition to plaintiff, from the exigencies of the business.

To summarize, we do not overturn the district court's factual findings; however, we hold that as a matter of law the established facts do not warrant a conclusion that UPS failed to accommodate plaintiff's disability. Therefore, the decision of the district court is reversed, and the case remanded for entry of judgment in favor of the defendant.

---

5. Notwithstanding this claim, the evidence shows that plaintiff did not give UPS a note he had gotten from his personal doctor prescribing a constant 8:30 to 5:30 schedule, because he felt it was unnecessary under the circumstances.