Kay **HURLEY–BARDIGE**, Plaintiff,

v.

Jesse **BROWN**, Secretary, Department of Veterans Affairs, Defendant.

Civ. A. No. 94–11712–WGY.

United States District Court,
D. Massachusetts.

Oct. 5, 1995.

Donald N. Freedman, Concannon, Rosenberg, Goldstein & Magence, Newton, MA, for Plaintiff.

Cheryl L. Conner, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case concerns Section 504 of the Federal Rehabilitation Act of 1973, which requires that government agencies make "reasonable accommodation" for otherwise qualified handicapped employees. 29 U.S.C.A. § 794 (West Supp.1993); 45 C.F.R. § 84.12(a) (1994). Specifically, in deciding the motion of the defendant employer ("the Secretary") for summary judgment, this Court must determine (1) whether the Rehabilitation Act's "reasonable accommodation" requirement encompasses a duty to reassign a handicapped employee to a work station that would allow the employee to perform her duties more easily, and (2) whether, or under what circumstances, an employer's failure reasonably to accommodate a handicapped employee in violation of the statute constitutes a constructive discharge of that employee.

## I.  BACKGROUND [1]

Beginning in 1989, the plaintiff, Kay Hurley–Bardige ("Hurley–Bardige"), was employed as a nurse practitioner at the outpatient clinic of the Veterans Administration

---

**1.** For purposes of this motion, the Court presents the facts in the light most favorable to the non-moving party, Hurley–Bardige.  *Santiago–Ra-* *mirez v. Secretary of Dep't of Defense,* 62 F.3d 445, 446 (1st Cir.1995).

("the Department") in Boston, Massachusetts. As a nurse practitioner, Hurley–Bardige performed duties in the screening clinic, the pulmonary clinic, internal medicine, and infection control. Late in 1991, Hurley–Bardige was diagnosed with Meniere's Disease, a chronic affliction of the inner ear that causes abrupt and uneven changes in balance and hearing. In August, 1993, Hurley–Bardige suffered a sudden and severe bilateral hearing loss caused by the disease. She informed her supervisors that the attack rendered her unable to hear heart and lung sounds. In addition, she claimed to suffer from occasional vertigo and fainting spells. Due to the nature of her symptoms, she requested a temporary transfer to an administrative or non-patient unit. Although the Department routinely reassigns employees who become handicapped as a result of incidents occurring at work, Hurley–Bardige's request for reassignment was not granted. Instead, the Veterans Administration provided her with a telephone designed for the hearing impaired and ordered her a hearing impaired stethoscope.

According to Hurley–Bardige, during the two years after her illness became more severe, five nurse practitioner positions became available at satellite clinics of the Boston Veterans Administration Medical Center. Hurley–Bardige was never informed of these positions or considered for them despite her continued requests for a transfer. Moreover, Hurley–Bardige alleges that her co-workers often demeaned and ridiculed her on account of her disability.

On October 27, 1993, Hurley–Bardige took medical leave without pay or benefits. In April, 1994, six months after Hurley–Bardige went on medical leave, the special stethoscope arrived. The Department continues to keep Hurley–Bardige's position open in the hope that she will, with the aid of the accommodations provided, be able to return to work. Hurley–Bardige believes that these accommodations are insufficient. Thus, she has remained on medical leave and instead instituted this discrimination suit under the Federal Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq.* (West 1985 & Sup. 1993) (the "Rehabilitation Act" or the "Act").

Hurley–Bardige argues that by refusing to reassign her to a nurse practitioner's position which would facilitate an easier performance of her duties, the Department failed to make reasonable accommodation for her handicap in violation of the Act. She further argues that the Department's failure to accommodate her contributed to a hostile working environment which caused her to be constructively discharged from her job.

The Secretary—the defendant Jesse Brown, the Secretary of the Department of Veterans Affairs—now moves for summary judgment, arguing that the Act does not require employers to make reasonable accommodation by reassigning disabled employees to new positions and that, moreover, Hurley–Bardige was not subjected to any adverse employment decision and thus cannot make out a prima facie case of discrimination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The "material" facts upon which the party opposing summary judgment relies must demonstrate a genuine dispute "over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant, however, is not required to make an affirmative showing that there are *no* material facts in issue. Rather, the movant need only demonstrate that the non-movant has not proffered *enough* evidence to permit a reasonable trier of fact to find for her. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553; *Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir.1992).

## III. DISCUSSION

The Secretary here moves for summary judgment on the ground that Hurley–Bardige has failed to make out even a prima facie case of discrimination, and thus he is entitled to judgment as matter of law. In

order to establish a prima facie case under the Rehabilitation Act, Hurley–Bardige must establish (1) that at the time of the alleged discrimination she suffered from a cognizable disability; (2) that she was, nonetheless, qualified to do the job; and (3) that she suffered an adverse employment decision because of her disability. *Taub v. Frank,* 957 F.2d 8, 10 (1st Cir.1992); *see also Boldini v. Postmaster Gen.,* No. 91–680–L, 1995 WL 303631, at *3 (D.N.H. May 11, 1995) (Loughlin, J.); *Welsh v. Derwinski,* No. 90–10950–Z, 1991 WL 405597, at *2 (D.Mass. June 21, 1991) (Zobel, J.).

The Secretary contends that Hurley–Bardige has failed to satisfy the third prong of the prima facie requirement. The Rehabilitation Act, he says, was only intended to cover "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating," see *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981), and was not intended to cover situations such as the one at bar where an employee quits after the employer refuses to grant a transfer. *Cf. Connell v. Bank of Boston,* 924 F.2d 1169, 1179–80 (1st Cir. 1991), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991) (peremptory discharge, though retaliatory, was not an adverse employment decision because plaintiff did not suffer as a result of employer's action); *Haimovitz v. United States Dep't of Justice,* 720 F.Supp. 516, 526 (W.D.Pa.1989), *aff'd,* 902 F.2d 1560 (3d Cir.1990) (transferring federal employee to allegedly undesirable location in another state did not constitute an adverse employment decision).

Although not precisely articulated, the Secretary's argument is essentially twofold. He maintains that (a) by providing Hurley–Bardige with a stethoscope and telephone for the hearing-impaired the Department did in fact comply with the Act's reasonable accommodation requirement and (b) even assuming that the Department's accommodations were insufficient under the Act, Hurley–Bardige quit of her own free will and, therefore, there can be no liability.[2]

Hurley–Bardige, on the other hand, argues that because nurse practitioners perform a variety of functions within the Veterans Administration (including direct patient care, administrative duties, and conducting health education programs), reassigning her to another unit would not constitute giving her a *new job*—something not required by the Rehabilitation Act—but rather, would simply amount to changing her work *site,* which has been held by courts to constitute a required reasonable accommodation in certain circumstances. Hurley–Bardige argues that because the Department refused to accommodate her handicap in this way, and because her supervisors and coworkers maligned her and failed to provide her with adequate medical equipment, the Department prevented her from being able to perform her regular duties and thus forced her to quit her job.

### A. Reasonable Accommodation

The Secretary maintains that wholesale changes in position are not what is meant by "reasonable accommodation" under the Act, and thus the provision of equipment for the hearing-impaired was a sufficient accommodation. *See Mazzarella v. United States Postal Serv.,* 849 F.Supp. 89, 95 (D.Mass. 1994) (Mazzone, J.) (agency not required to oblige an employee's propensity for violent outbursts by juggling personnel). There is, however, no *per se* rule against transfers as reasonable accommodations. *See Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993) (transfer to alternate work site may be a reasonable accommodation); *Arneson v. Heckler,* 879 F.2d 393, 398 (8th Cir.1989) (if other solutions fail, district court must con-

---

**2.** The Secretary contends that because Hurley–Bardige has not formally pled "constructive discharge," the Court cannot proceed to consider it as grounds for liability. The Court will not be so formalistic. *See* Fed.R.Civ.P. 8 (pleadings are to be construed liberally); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir.1992) (plaintiff is not required to specify precise legal theory if it is implicit in the complaint); *cf. In re San Juan Dupont Plaza Hotel Fire Litig.,* 45 F.3d 564, 567 (1st Cir.1995) (mislabeled notice of appeal not grounds for dismissal where no prejudice to opposing party). Because it is obvious from the facts alleged in the complaint that Hurley–Bardige is proceeding under a theory of constructive discharge, this Court proceeds accordingly.

sider the possibility of a transfer to another branch office). Moreover, *The Handbook on Reasonable Accommodations* published by the United States Office of Personnel Management, explicitly includes "reassignment" among permissible accommodation strategies. It states that "an employee's work experience and education may indicate that he or she can perform satisfactorily in another position" and encourages federal employers to make such accommodations where possible. Similarly, the *Federal Personnel Manual* provides that agencies "must exhaust all reasonable efforts to alleviate any service deficiencies through accommodation and/or reassignment" prior to suggesting that employees seek retirement or disability leave. *See Rhone v. United States Dept. of Army,* 665 F.Supp. 734, 743–44 (E.D.Mo. 1987) (quoting *The Handbook* and the *Personnel Manual*). Although the case law and the government's internal guidelines indicate that such reassignments are *permissible,* the extent to which such transfers are *required* by law remains unclear.

In *School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 9, 94 L.Ed.2d 307 (1987), the Supreme Court noted in dicta that, although employers are not required to find another job for disabled employees, they cannot deny such employees alternative employment opportunities reasonably available under their existing policies. *See also August v. Offices Unlimited, Inc.,* 981 F.2d 576, 580 n. 4 (1st Cir.1992). Lower courts have interpreted the Supreme Court's language in *Arline* to mean that while employers are under no obligation to let handicapped employees *switch jobs,* they must allow employees to *transfer locations or work sites* within the same job category. *See Tuck v. HCA Health Services of Tennessee, Inc.,* 7 F.3d 465, 473 (6th Cir.1993) (where hospital refused to transfer nurse with back problems to available nursing position that did not involve heavy lifting, hospital had not discharged its

obligation to make reasonable accommodation); *Rhone,* 665 F.Supp. at 744 (Department of the Army failed to satisfy its duty of reasonable accommodation by refusing to transfer disabled employee to day shift or find him an equally suitable position).

■ This obligation, however, is not absolute. Indeed, an employer may refuse to transfer an employee without violating the Act where a collective bargaining agreement or some other internal rule prevents *all* employees from transferring. *See Carter v. Tisch,* 822 F.2d 465 (4th Cir.1987) (disabled custodian not entitled to transfer to light duty position where collective bargaining agreement provided that employees must serve five years before becoming eligible for such positions and plaintiff did not meet this requirement); *cf. Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir.1995) (under Americans with Disabilities Act, transfer not required where move would constitute a *promotion* ); *Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393, 397–98 (E.D.Tex.1995) (under the ADA, reassignment not required where it is not the regular practice of the employer to allow transfers between facilities and allowing disabled employee to transfer would give him an advantage over other employees).[3] In this instance, however, the Department routinely reassigns employees who become disabled *on the job,* see *supra.* Thus, such transfers are clearly not prohibited by Veterans Administration policy or by any collective bargaining agreement. Therefore, if the requested reassignment were found to be a "transfer," the Department would be obliged as matter of law to grant it.

■ In this case, it is unclear from the record whether allowing Ms. Hurley–Bardige the accommodation she requests would constitute giving her a "new job" or would simply be "transferring" her to a different work site. As this determination involves factors not presented to this Court, summary judg-

---

**3.** Moreover, employers are not required to transfer disabled employees who are particularly disruptive and have received warnings regarding their behavior. *See Fuller v. Frank,* 916 F.2d 558 (9th Cir.1990) (Post Office not required to reassign alcoholic employee to an inside position where employee already warned he was on his

"last chance"); at *Boldini v. Postmaster Gen.,* No. 91–680–L, 1995 WL 303631, *4 (D.N.H. May 11, 1995) (Loughlin, J.) (agency not required to transfer disabled employee in order to assure that employee will not be offended by his superior or to prevent violence in the workplace).

ment on this basis is inappropriate.[4] Moreover, even if the Department were not required to reassign Hurley–Bardige, the accommodations the Department did make may nevertheless have been insufficient. *See, e.g., James v. Frank,* 772 F.Supp. 984 (S.D.Ohio 1991) (accommodation made in untimely fashion not reasonable). The question whether the accommodations provided by the agency were made in a timely manner depends on circumstances in dispute. Thus, genuine issues of material fact exist as to whether the Department violated the Act. The Secretary, therefore, cannot be granted judgment as matter of law on this basis.

## B. Constructive Discharge

■ In order to satisfy the final prong of the prima facie case, Hurley–Bardige must prove that she suffered an adverse employment decision as a result of her handicap. Not all actions taken by an employer, however, constitute "adverse employment decisions." *See Connell v. Bank of Boston,* 924 F.2d 1169, 1179–80 (1st. Cir.1991), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). Indeed, Hurley–Bardige must demonstrate that she was deprived of a term, privilege, or condition of employment. *See id.* at 1179.

The Secretary contends that because most of the cases under the Rehabilitation Act involve claims arising as a result of the employer's failure to hire, failure to promote, or termination of a disabled employee, a failure to transfer cannot constitute an adverse employment decision. This is clearly incorrect. As already explained, Hurley–Bardige argues her case under a theory of constructive discharge. Thus, the adverse employment decision alleged by Hurley–Bardige is *not* the failure to transfer *per se,* but rather, the constructive discharge that resulted from the Department's failure to transfer her com-

bined with the alleged mistreatment from her supervisors and peers.

It is true that the allegation of constructive discharge poses a "special wrinkle" for courts considering whether a prima facie case has been made out. *See Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994). Nevertheless, courts have recognized constructive discharge as an actionable adverse employment decision under the Rehabilitation Act. *See Johnson v. Shalala,* 991 F.2d 126 (4th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 52, 130 L.Ed.2d 12 (1994); *Kent v. Derwinski,* 790 F.Supp. 1032 (E.D.Wash.1991). Thus, if a plaintiff can demonstrate facts sufficient to prove constructive discharge, then the plaintiff has satisfied the prima facie requirement that she suffered an adverse employment decision.

Assuming, then, that the Veterans Administration did in fact violate the Act, the question is whether Hurley–Bardige has proffered evidence sufficient to convince a reasonable fact finder that she was constructively discharged from her job.

■ "There is no mathematically precise test" for what constitutes constructive discharge, *Hogue v. MQS Inspection,* 875 F.Supp. 714, 723 (D.Colo.1995), and the circuit courts of appeal are divided on the level of proof necessary to substantiate such a claim. While the Fourth and Eighth Circuits require that an employee prove the employer intended to force the employee to resign, *see EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633 (4th Cir.1983), *rev'd on other grounds sub nom. Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) and *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981), the First Circuit adheres to a more lenient standard under which an employee need only prove that a reasonable person would have resigned as a result of

---

4. Were the finder of fact to determine here that sending Hurley–Bardige to a non-patient unit would be a "transfer," the Department would be required as matter of law to make such an accommodation unless it could proffer evidence that the requested accommodation was either not possible or unduly burdensome. *See Barth v. Gelb,* 2 F.3d 1180, 1188 (D.C.Cir.1993), *cert.*

*denied sub nom. Barth v. Duffy,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994) ("undue hardship on the operation of its program" is an affirmative defense which employer must prove); *Buckingham v. United States,* 998 F.2d 735, 739 (9th Cir.1993). Here the Secretary has made no such showing.

workplace conditions.[5] *See Vega v. Kodak Caribbean, Ltd,* 3 F.3d 476, 480 (1st Cir.1993) (constructive discharge occurs where employer makes work "so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than submit to looming indignities"); *Sanchez v. Puerto Rico Oil Company,* 37 F.3d 712, 719 (1st Cir.1994) ("[a] constructive discharge may also occur when an employer effectively prevents an employee from performing his job"); *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977).

■ As the Rehabilitation Act imposes greater duties on employers than other federal discrimination statutes, see *Southeastern Community College v. Davis,* 442 U.S. 397, 410–11, 99 S.Ct. 2361, 2368–69, 60 L.Ed.2d 980 (1979) (Rehabilitation Act encompasses an *affirmative* duty reasonably to accommodate persons with disabilities), the formula for constructive discharge utilized in other contexts is not easily transposed to the Rehabilitation Act arena. *See Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 52, 130 L.Ed.2d 12 (1994). Although the failure to make reasonable accommodation (or some other statutory violation) is a *necessary* element of a constructive discharge claim under the Rehabilitation Act, see *Boldini,* 1995 WL 303631, at *7, it is unclear whether such a violation is *sufficient* evidence of constructive discharge.

To date, only one circuit court has been faced with applying the concept of constructive discharge to the Rehabilitation Act. Applying its "intent of the employer" standard for constructive discharge to the Act, the Fourth Circuit has held that an employer's partial or imperfect accommodation cannot, in and of itself, constitute a constructive dis-

charge. *See Johnson,* 991 F.2d at 131–32.[6] Instead, a disabled plaintiff who has not been reasonably accommodated must prove *both* that the failure to accommodate created intolerable working conditions *and* that the employer had a "deliberate intent" to discharge her. *Id.* The Fourth Circuit reasoned that to hold otherwise would "convert every failure to accommodate under the Rehabilitation Act into a potential claim for constructive discharge," and would allow plaintiffs who have not been accommodated to quit their jobs "without first resorting to the administrative and judicial remedies provided by Congress to mediate these disputes while the employment relationship can still be salvaged." *Id.* at 131.

■ A district court in the Ninth Circuit, which employs the First Circuit's more lenient reasonable person test, has also had occasion to confront this dilemma. *See Kent v. Derwinski,* 790 F.Supp. 1032 (E.D.Wash. 1991). After a bench trial on the merits, a district court in the Eastern District of Washington held that an employer's good faith effort to accommodate a disabled employee was insufficient. This failure reasonably to accommodate the employee, who was also taunted by her co-workers, ridiculed on account of her handicap, and inappropriately disciplined by her supervisor, led to the employee's constructive discharge. The court utilized a totality of the circumstances approach and found that the failure to make reasonable accommodation was simply one piece of evidence, among many, that contributed to the severity and pervasiveness of the hostile working environment. *Id.* at 1139–41. Thus, it appears that even under the more lenient reasonable person test, more than a mere failure to make reasonable accommodation is necessary to prove constructive discharge.[7] In this case, the Department's fail-

---

**5.** This is the majority position. *See Goss v. Exxon Office Sys.,* 747 F.2d 885, 888 (3d Cir.1984); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983); *Nolan v. Cleland,* 686 F.2d 806, 812–15 (9th Cir.1982); *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982); *Clark v. Marsh,* 665 F.2d 1168, 1174–76 (D.C.Cir.1981); *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61 (5th Cir.1980).

**6.** The Court suggested, however, that where an employer fails to make any accommodation at

all, such behavior could provide sufficient evidence of deliberateness to prove constructive discharge.

**7.** The Court can certainly imagine instances where the failure to make reasonable accommodation, by itself, *could* create a working environment so hostile that a reasonable employee would resign his or her position. For example, were an employer to refuse to build a ramp or elevator for an employee confined to a wheel-

ure to transfer Hurley–Bardige to a non-patient unit cannot be said to have created an environment so hostile that a reasonable person in her position would have felt compelled to resign.

In addition to the failure to transfer, however, Hurley–Bardige proffers evidence that her supervisors and coworkers demeaned her and told her that she was incompetent as a result of her disability. Moreover, she says that the telephone that was provided for her was defective and the stethoscope that was ordered for her arrived months after she requested it. Given the totality of the circumstances, a trier of fact may reasonably conclude that Hurley–Bardige was subjected to a working environment so hostile that a reasonable person in her position would have resigned. *See Solt v. The Seiler Corp.*, No. 92–572–SD, 1995 WL 30599 (D.N.H. Jan. 23, 1995) (Devine, J.) (holding that reasonable fact finder could conclude that employee who was ignored, treated harshly, and made to do unnecessary work by hospital staff felt compelled to resign, rendering summary judgment inappropriate); *Flamand v. American Int'l Group, Inc.*, 876 F.Supp. 356, 369 (D.P.R.1994) (where genuine issue of material fact exists as to whether work environment is sufficiently hostile to support claim for constructive discharge, summary judgment should be denied).

## IV. CONCLUSION

In sum, can it be said as matter of law that the Department here reasonably accommodated a disabled employee with a hearing condition? **No.**

Does the failure to make reasonable accommodation amount *per se* to constructive discharge? **Usually not, and definitely not here.**

chair, making it impossible for the employee to get to work, the employer would be guilty of constructively discharging that employee in violation of the Rehabilitation Act. *Cf. Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994) (constructive discharge occurs where employer's actions effectively prevent employee from doing his or her job). Likewise, were an employer to refuse to transfer an employee with a respiratory condition to a smoke-free work station, this failure to accommodate could create

Finally, because Hurley–Bardige has adduced evidence of such sufficient additional circumstances as would render her workplace so hostile that a reasonable person would feel compelled to resign, a reasonable fact-finder could conclude that Hurley–Bardige was constructively discharged on account of her disability. Accordingly, the Secretary's motion for summary judgment must be, and hereby is, *DENIED.*

a hostile work environment sufficient to constitute constructive discharge. *See* Frank S. Ravitch, *Beyond Reasonable Accommodation: The Availability and Structure of a Cause of Action for Workplace Harassment Under the Americans with Disabilities Act*, 15 Cardozo L.Rev. 1475, 1511 (1993). In the present case, however, the failure to grant the requested transfer cannot be said to be so egregious a violation of the Act—if a violation at all—to constitute constructive discharge.