**Joseph SEERY, Plaintiff,**

v.

**BIOGEN, INC., Defendant.**

**No. CIV.A.2000–12232–RBC.** [1]

United States District Court,
D. Massachusetts.

April 11, 2002.

1. This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). (Notice of Case Assignment # 20).

 

Samuel L. Rodriguez, Attorney at Law, Jamaica Plain, MA, for Joseph Seery, Plaintiff.

Kenneth M. Bello, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Steven D. Weatherhead, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, for Biogen, Inc., Defendant.

### *MEMORANDUM AND SECOND ORDER ON DEFENDANT BIOGEN, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS (# 17)*

COLLINGS, United States Magistrate Judge.

### *I. Introduction*

On October 27, 2000, plaintiff Joseph Seery ("Seery" or the "plaintiff") commenced this action by filing a three-count complaint (# 1) against defendant Biogen, Inc. ("Biogen" or the "defendant"). Seery subsequently amended the complaint, with leave from the Court to do so, on March 30, 2001(# 4). The amended complaint contains counts against Biogen for retaliation (Count I), disability discrimination (Count II) and wrongful termination (Count III). On April 30, 2001, Biogen submitted a motion (with supporting memorandum) to dismiss plaintiff's first amended complaint and jury demand in its entirety, or, in the alternative, to strike certain allegations and dismiss Counts II and III (## 7, 8). On May 25, 2001, Seery opposed Biogen's motion to dismiss (# 12), and on June 10, 2001, Judge Wolf, the District Judge to whom this case was originally assigned, denied Biogen's motion to dismiss "without prejudice to addressing these issues on a possible motion for summary judgment at the conclusion of discovery."

On June 14, 2001, Biogen filed a motion for leave to file a reply memorandum in

further support of its motion to dismiss (# 13), and on July 23, 2001, Judge Wolf granted that motion. On August 10, 2001, Biogen answered the complaint (# 15), and then on September 7, 2001, Biogen filed a motion for judgment on the pleadings (# 17) and a supporting memorandum (# 18). On September 14, 2001, Judge Wolf reassigned the case for all purposes to the undersigned. (## 19, 20). On October 4, 2001, Seery filed a memorandum in opposition to Biogen's motion for judgment on the pleadings. (# 23). On October 16, 2001, Biogen, with leave from the Court, filed a reply memorandum in further support of its motion for judgment on the pleadings. (# 25).

On October 17, 2001, this Court held a hearing on Biogen's motion for judgment on the pleadings. The Court then held a further hearing on December 17, 2001. Just a few days prior to the hearing, on December 14, 2001, Biogen, with leave from the Court, filed a supplemental memorandum of law in further support of its motions for summary judgment and judgment on the pleadings. (# 31). On December 17, 2001, Seery filed a supplemental memorandum and opposition to Biogen's attempt to expand purpose of hearing (# 28), with a supporting affidavit (# 29).[2] On January 17, 2002, Seery filed an Opposition to Motion for Summary Judgment (# 38).

On April 4, 2002, I issued a Memorandum and First Order on Biogen's Motion for Judgment on the Pleadings in which I denied the motion as to Counts I and II to the extent that the motion was premised on a claim that Seery had 180 days, not 300 days, to file his charge with the EEOC. In this Memorandum and Second Order, I will address the remainder of Biogen's arguments, the principal one be-

ing that applying the 300 day statute of limitations, Seery's claims for discrimination and retaliation must fail because the "continuing violation" theory is inapplicable on the facts as pleaded.

## II. The Facts

The facts were set forth in detail in the Memorandum and First Order. Thus, there is no need to restate them in full here. I hereby incorporate the facts as they were set forth in that the prior order and restate here (in summary form) only those facts that are relevant for purposes of deciding the remainder of Biogen's motion.

*Summary of Facts and Relevant Dates*

November 24, 1997–the plaintiff receives a zero percent raise despite a positive annual review;

Winter, 1998–the plaintiff requests an internal investigation into why he was not given a raise; Biogen classifies the plaintiff as a problem employee;

Summer, 1998–the plaintiff takes a leave from Biogen due to his illness;

July 23, 1998–Biogen sends the plaintiff a letter telling him that Biogen believes he was resigning;

August 31, 1998–the plaintiff's doctor sends Biogen a letter requesting accommodations for the plaintiff;

September, 1998–the plaintiff returns to work at Biogen;

October, 1998–the plaintiff is denied access to his files by Biogen;

September, 1998 to

January, 1999–Biogen holds weekly critiques of the plaintiff's work, and the plaintiff is told by Biogen that he is being singled out for these critiques because of his internal complaint about disability discrimination;

**2.** In response to Seery's request, the Court granted him until January 11, 2002 (and then

until January 16, 2002) to submit additional materials that respond to Biogen's arguments.

January, 1999–the plaintiff writes an internal memorandum complaining of the retaliation by Biogen;

[February 9, 1999–300 days before December 7, 1999, the date the plaintiff files his EEOC charge]

March 8, 1999–Biogen terminates the plaintiff.

### III. Analysis

■ Biogen argues that Counts I (Retaliation) and II (Discriminatory Discharge) of the Amended Complaint should be dismissed because even if the 300 day statute of limitations applies, the counts are still time-barred.[3] Seery argues, on the other hand, that his claims are viable under a "continuing violation" theory. More specifically, Seery argues that he has raised "sufficient [issues] of material fact to warrant discovery with respect to...the context for [Biogen's] decision to terminate Mr. Seery." (# 38, p. 4) The plaintiff appears to be treating Biogen's motion as one for summary judgment. He has not, however, presented the Court with any credible argument as to why he should be entitled to discovery under Fed.R.Civ.P. 56(f). Because I need not look beyond the pleadings in order to rule on this aspect of Biogen's motion, I treat Biogen's motion as a motion for judgment on the pleadings as

to Counts I and II. For the reasons discussed below, I agree with Biogen's argument that on the facts as pleaded, the "continuing violation" theory is inapplicable and, thus, will thus allow Biogen's motion on Count I and Count II of the Amended Complaint.[4]

■ This Court has previously held that the 300 day statute of limitations applies to plaintiff's case, and it has been established that the plaintiff filed his claim with the EEOC on December 7, 1999. Three hundred days before December 7, 1999 is February 9, 1999.

■ In order for the plaintiff's claims to be actionable, therefore, they must have occurred on or after February 9, 1999 because a "plaintiff generally cannot litigate claims based on conduct falling outside of this [limitations] period." *Provencher v. CVS Pharmacy*, 145 F.3d 5, 13–14 (1 Cir.1998). However, where the violation is "of a continuing nature, the charge of discrimination filed...may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period...." *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1 Cir.1997)(internal quotations omitted).

**3.** Biogen also argues that Count III should be dismissed for failure to state a claim and that Counts I and II should be dismissed because the plaintiff has failed to make out a prima facie case of failure to accommodate reasonably. There is no merit to these claims because assessing whether an accommodation is reasonable or not is more properly suited for a summary judgment motion. See, e.g., *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 515 (1st Cir.1996)("Cases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior."); *Hurley–Bardige v. Brown*, 900 F.Supp. 567, 572 (D.Mass.1995)(denying defendant's motion for summary judgment because genuine is-

sues of material fact existed as to "whether the accommodations provided by the [defendant] were made in a timely manner."). In addition, Biogen's argument on Count III is better suited for a summary judgment motion.

**4.** I have reviewed the materials submitted by plaintiff in opposition to the motion for summary judgment to determine if any contradict the assertions made by plaintiff in his Amended Complaint upon which I rely. I find that none do, so I see no need to consider them and conclude that I may enter judgment on the pleadings. I do note that some of the documents support my conclusion. See footnote 6, infra.

■ There are two types of continuing violations-systemic and serial. *Id.* at 868. In this case, if there were continuing violations, they were serial, not systemic. "Serial violations...occur where the plaintiff experiences a number of similar discriminatory acts arising from the same discriminatory animus." *Rivera–Rodriguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico Puerto Rico, Inc.*, 265 F.3d 15, 22 (1 Cir.2001)(citing Sabree v. United Broth. of Carpenters and Joiners Local No. 33, 921 F.2d 396, 400 (1 Cir., 1990)). Serial violations are considered timely "if at least one discriminatory event occurs within the statutory period that anchors the earlier claims....The anchor violation is only timely if it is part of and exposes a pattern of actionable discrimination." *Rivera–Rodriguez*, 265 F.3d at 22 (internal citations omitted).

■ Counting back from December 7, 1999, the date that the plaintiff filed his EEOC charge, only the termination (which occurred on March 8, 1999) is timely. All the other events occurred prior to February 9, 1999. Thus, the termination is the so-called "anchor event." However, it is important to note that "a continuing violation theory will fail '[e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period...if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.'" *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir.2000)(quoting Provencher, supra, 145 F.3d at 14).

In *Colon Quiles v. American Airlines*, 133 F.Supp.2d 151 (D.P.R.2001), the Court held that there was no continuing violation where the plaintiff alleged that the last act of discrimination was her termination be-cause the plaintiff's "administrative termination was merely a subsequent effect of alleged earlier discriminatory action that does not extend the limitations period." *Id.* at 158 (citing *Pilgrim, supra,* 118 F.3d at 869). See also *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 11 (1 Cir.2001)(incidents time-barred where plaintiff admitted that "long before he filed his complaint, he already suspected that age discrimination was at work."); *Castro Ortiz v. Fajardo*, 133 F.Supp.2d 143, 148 (D.P.R., 2001) (granting defendant's motion to dismiss on grounds that there can be no continuing violation where plaintiff "was aware of the alleged discrimination at least a full year before he filed his charge with the EEOC.").

In the instant case, it seems clear that the plaintiff knew that he was being discriminated against at the time it was occurring or shortly thereafter.[5] For example, the plaintiff himself alleges that sometime between September of 1998 and January of 1999, Mr. Pepinsky of Biogen told the plaintiff that he was receiving weekly critiques of his work because "Biogen had singled him out because [he] made an internal complaint about disability discrimination." (# 4, ¶ 32). Similarly, in October of 1998, the plaintiff was denied access to his files at Biogen. (*Id.* at ¶ 33). Then, in January of 1999, the plaintiff wrote a letter to Mr. Davies and Mr. Pepinsky complaining about "the way Biogen had singled him out and continued to retaliate against him." (*Id.* at ¶ 34). Thus, by his own admission, the plaintiff knew as early as January, 1999 (if not before) that Biogen was in fact "singling him out" and that Biogen was, according to the plaintiff, retaliating against him be-

---

5. I am assuming only for purposes of analyzing the continuing violation argument that there was indeed discrimination. I make no actual finding to that effect.

cause he had previously filed an internal complaint about discrimination.[6]

The plaintiff knew, or at least should have known, that he was being discriminated against as of January, 1999 at the latest. He had the wherewithal to write a letter to Biogen complaining of the discrimination and retaliation in January, 1999 and could therefore have filed his charge with the EEOC at that time or within a short time thereafter but manifestly well within a 300 day time frame. See *Sabree*, supra, 921 F.2d at 401–02 (holding that a knowing plaintiff has an obligation to file promptly or lose his claim as "distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.").

Moreover, as previously stated, all of the events complained of by the plaintiff, except his actual termination, occurred before February 9, 1999, the cutoff date for statute of limitations purposes. The event of termination of the plaintiff by Biogen does not "save" the plaintiff's claim because, as the Court explained in Colon–Quiles, the plaintiff's "termination was merely a subsequent effect of alleged earlier discriminatory action that does not extend the limitations period." *Colon Quiles*, 133 F.Supp.2d at 158 (citing *Pilgrim, supra*, 118 F.3d at 869). Indeed, the plaintiff alleges that "Biogen's failure to accommodate Mr. Seery rendered it impossible for Mr. Seery to properly perform his duties, and impeded his ability to complete his tasks, and ultimately resulted in Biogen's termination of Mr. Seery" and that Biogen's "retaliatory treatment continued through the term of his employment up through the date of his termination." (# 4, ¶¶ 45, 53) (emphasis added). In the plaintiff's view, his termination was simply a subsequent effect of the earlier discrimination. That is, the termination was merely the ultimate result of the discrimination that had been ongoing for at least 14 months. Therefore, the fact that the termination occurred within the statutory time frame is not enough to extend the statute of limitations period back to encompass the other discriminatory events. For this reason, I find that there is no continuing violation here and I will therefore allow Biogen's motion as to Count I and II of the Amended Complaint. As of at least January, 1999, the plaintiff should have been aware of the need to assert his rights and, consequently, had to file his complaint with the appropriate administrative agency within 300 days thereafter. This he failed to do.

■ The fact that I am dismissing Counts I and II has no bearing on Count III, even though that claim is a claim dealing exclusively with matters of state law. When the case was originally filed on October 27, 2000, the basis of federal jurisdiction was asserted to be federal question under the ADA. However, there was also diversity jurisdiction as the par-

---

**6.** Although I will not consider it in ruling on the instant motion, I note that a document submitted by the plaintiff along with his Opposition to Motion for Summary Judgment (# 38, Ex. A) only bolsters the argument that the plaintiff knew that he was being discriminated against long before he filed his claim with the EEOC. In an email, the plaintiff wrote "[d]uring Jan. 1997, I went to Lois Schiappa (HR) to discuss the issue of medical discrimination, because I felt that since the onset of [my] disease that I had been discriminated against for 1) raises, 2) promotion and 3) stock options (merit)." Thus, it appears evident that the plaintiff knew that he was being discriminated against by Biogen as early as January, 1997.

ties are citizens of different states[7] and the amount in controversy was greater than $75,000. The fact that the amount in controversy on Count III standing alone may be less than $75,000 does not usurp this Court of jurisdiction over that claim, even after dismissal of Counts I and II.[8] "[D]ismissal of part of the case, thereby reducing the amount in recovery, does not necessarily destroy jurisdiction.... If diversity jurisdiction existed at the time the case was filed, it is not affected by dismissal of one [or more] of the claims, even though the amount recoverable on the remaining claim is less than the required amount." 15 Moore's Federal Practice § 102.104[3], at p. 1021–69 (3d ed.2001). Thus, this Court will retain jurisdiction over Count III of the Amended Complaint.

## IV. Conclusion

For the aforementioned reasons, it is ORDERED that the Defendant Biogen's Motion for Judgment on the Pleadings (# 17) as to Counts I and II be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that Defendant Biogen's Motion, Etc. (# 17) be, and the same hereby is, otherwise, DENIED. An initial Rule 16(b) Scheduling Conference shall be set.

---

7. The plaintiff resides in New Hampshire and the defendant has a usual place of business in Massachusetts. (# 4, ¶¶ 1, 2).

8. In Count III the plaintiff alleges that Biogen terminated the plaintiff "to avoid paying Mr. Seery his [800 shares of Biogen] stock which had vested." Assuming this is a viable claim,

the amount in controversy would be approximately $46,300 because on October 27, 2000, the date the complaint was originally filed, Biogen's stock was trading at $57.88 per share and the plaintiff purportedly owned 800 shares.